**Nick AVILA, Jr., Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 02PDJ005.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 22, 2002.

Attorney Regulation. The Hearing Board readmitted Nick Avila Jr., to the practice of law following a readmission hearing, effective July 26, 2002.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and two hearing board members, THOMAS J. OVERTON and DOUGLAS D. PIERSEL, both members of the bar.

## OPINION AND ORDER READMITTING NICK AVILA, JR., TO THE PRACTICE OF LAW.

### *ATTORNEY READMITTED TO THE PRACTICE OF LAW*

A readmission hearing was held in the within matter on May 20 and 21, 2002, pursuant to C.R.C.P. 251.29(a) before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") Roger L. Keithley and two hearing board members, Thomas J. Overton and Douglas D. Piersel, both members of the bar. John Astuno, Jr. appeared on behalf of petitioner Nick Avila, Jr. ("Avila"), who was also present. James S. Sudler, Assistant Attorney Regulation Counsel, appeared on behalf of the People of the State of Colorado (the "People"). The following witnesses testified on behalf of Avila: Lesile Jordan, Ph.D., Brooke Wunnicke, Manual J. Solano, Cipriano Griego, David W. Givens, Debra Williams, Laurie A. Crook, Renee Schwalger, Marcella Paiz, Judge Aleene Ortiz–White, and Sandy Baca–Sandoval. Nick Avila, Jr. testified on his own behalf. Avila offered and the PDJ admitted into evidence stipulated exhibits A though N.

The Hearing Board considered the testimony and credibility of the witnesses, the stipulation entered into by the parties, the exhibits admitted into evidence, and made the following findings of fact, which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Nick Avila, Jr. ("Avila") took the oath of admission and was admitted to the bar on May 17, 1977, registration number 08049. Avila was immediately suspended from the practice of law by Order of the Supreme Court dated July 1, 1986 due to his conviction in Denver District Court on two counts each of second degree forgery and conspiracy to commit second degree forgery. Avila arranged for the unauthorized alteration of two of his clients' driving records in the State Motor Vehicle Division. The two clients' driver's licenses were under revocation for alcohol-related offenses. Avila charged his clients between $1,500 and $3,000 for his services. *See People v. Avila,* 770 P.2d 1330 (Colo.App.1988). Avila was sentenced to a period of probation on these convictions.

Following the suspension of his law license, Avila encountered significant financial problems. Avila financed a drug operation importing cocaine from Florida to Colorado. In three transactions occurring from April through August 1987, Avila received more than three kilograms of cocaine. Avila was convicted in United States District Court for the District of Colorado of one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1982), and three counts of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1)(1982). Avila was sentenced to ten years in prison on each count and fined $10,000.00. As a result of the federal convictions, Avila's state probation was revoked and he was sentenced to a term of eight years in state prison to run consecutively with the federal term of incarceration. On July 17, 1989, by Order of the Supreme Court, Avila was disbarred from the practice of law in the State of Colorado. *People v. Avila,* 778 P.2d 657, 657 (1989). Over eight years have passed since the effective date of Avila's disbarment. *See* 251.29(a).

Avila served eight years of imprisonment. While serving his sentence in prison, Avila maintained relations with his family and was employed by the prison to work in the educational department where he helped inmates study for and take the high school equivalency exam. In 1995, Avila was released to a halfway house, and in 1996, he was released on parole. He was formally discharged from both sentences in July 1997.

Avila has worked to reestablish relationships with his two sons. His older son, a recent law school graduate, believes his father was and is his inspiration for choosing the legal profession, and remembers that even while he was in prison, Avila provided him with guidance and helped him when he encountered obstacles in school or in his personal life. Avila commits as much time as possible to his younger son. He provides transportation to and from school each day. He participates in his son's school activities and extra-curricular sports activities. He volunteers his time at his son's school, chaperoning dances, working at the church, collecting donations for mission trips and collecting food for the homeless. He extends financial support to his son beyond the child support payments he is required to pay. According to the mother of Avila's younger son, Avila has made a complete transformation since he was released from prison.

In his community, Avila has volunteered his time for several years to a program which helps at-risk teenagers obtain their high school equivalency diplomas. He assists with church functions, and gives presentations through a state agency on learning new skills and changing behavior. He offers himself as an example of the severity of the consequences for improper behavior.

Avila has established his proficiency in the law. He sat for and passed the February 27, 2001 Colorado Bar Exam, and the Multistate Professional Responsibility Examination. Prior to the submission of his Petition for Readmission, Brooke Wunnicke tutored Avila on the ethical obligations of a lawyer in Colorado. Specifically, Ms. Wunnicke instructed Avila on the importance of writing a representation letter at the outset of the attorney/client relationship, the need to render

competent representation to the client, the need to clarify the client's and attorney's goals, the importance of discussing fees with clients at the outset, the importance of confirming to the client in writing all major aspects of his representation, the need to confirm in writing all discussions or agreements with opposing counsel, the importance of identifying and addressing conflicts of interest, and the importance of remaining current on Colorado Bar Association Formal Ethics Opinions and the American Bar Association ethics opinions.

In addition to demonstrating his proficiency in the law by taking the bar exam, Avila has worked as a paralegal for the last five years. The attorneys with whom Avila worked as a paralegal—Cipriano Greigo, David Givens and Manuel Solano—uniformly agree that Avila possesses good lawyering skills, good judgment, an ability to quickly comprehend complex legal issues, a solid work ethic, and is technically competent. Accompanied by a supervising attorney, he has met with clients, communicated with clients on behalf of his employers, assisted in the drafting of pleadings and trial preparation, and conducted legal research. As a paralegal, Avila is hard-working, well organized, dedicated to the legal profession, and has earned a reputation for being honest and forthright. Avila has developed a mentoring relationship with these attorneys and will look to them in the event he needs advice on a legal matter. All three attorneys knew Avila personally and professionally prior to his incarceration, have worked with him since his release, and confirmed that Avila is a changed person who takes responsibility for his actions and can competently practice law. One of the attorneys has invited Avila to join his firm as an associate attorney.

Avila consulted with a psychologist, Dr. Leslie Jordan, from March through June 2000. Avila worked to rehabilitate those flaws in his character which resulted in his prior misconduct. Avila recognizes that his background, which included a childhood filled with a considerable amount of punishment but not a lot of guidance, resulted in his not developing core values, and he lacked these core values when entering the practice of law. He was the first member of his family to attend college. He started off as a young lawyer with no one to advise him how to handle his caseload. He worked under conditions of financial insecurity and continual fear of failure. He believed he could not fail in resolving his clients' legal problems, even when his solution did not comport with the law.

On January 15, 2002, Avila filed a Verified Petition for Readmission and Reinstatement. Avila has complied with past disciplinary orders. He fully complied with both his state and federal sentences and completed his period of parole without incident. The parties stipulated that Avila substantially complied with the Supreme Court's Order dated July 17, 1989, requiring him to pay the costs arising from the prior disciplinary proceeding in the amount of $212.61.

Avila acknowledges the seriousness of his misconduct and has expressed genuine remorse. He has demonstrated that he has been willing to put forth the self-discipline and emotional effort to change old patterns.

The People conducted an investigation of Avila's background, resulting in the conclusion that Avila has successfully changed his behavior. Based on this investigation of Avila's post-incarceration conduct, his testimony and the testimony of others in this proceeding, the People stipulated that Avila should be readmitted to the practice of law in Colorado.

## II. CONCLUSIONS OF LAW

C.R.C.P. 251.29 provides in relevant part:

(a) Readmission After Disbarment.

To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission ... [which] shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compli-

ance with all applicable disciplinary orders and with all provisions of this Chapter.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988) interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

[A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondent's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondent's life, and the respondent's recognition of the seriousness of his previous misconduct.

■ Rehabilitation for purposes of attorney reinstatement and readmission to the bar has been defined as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *Goff v. People,* 35 P.3d 487 (Colo. PDJ 2000), *citing* Avrom Robin, *Character and Fitness Requirements for Bar Admission in New York,* 13 TOURO L.REV. 569, 583 (1997)(*quoting In re Cason,* 249 Ga. 806, 294 S.E.2d 520, 522–23 (1982)). Other factors which are considered are the applicant's age at the time of the offense and the likelihood that the applicant will repeat the behavior in the future. *Id.* Courts, including those in Colorado, focus upon the applicant's current mental state. *Id., See Klein,* 756 P.2d at 1016.

■ Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. *Goff,* 35 P.3d at 495, 496. The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. *Id.* It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming which resulted in the discipline imposed. *Id., cit-*

*ing* C.R.C.P. 251.29(c)(5); *Tardiff v. State Bar,* 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980)(*citing Roth v. State Bar,* 40 Cal.2d 307, 253 P.2d 969, 972 (1953))(holding that in an application for reinstatement . . . the proof presented must be sufficient to overcome the court's former adverse judgment of [the] applicant's character).

■ Avila established that he has complied with all applicable disciplinary orders and with all provisions of the relevant rules regarding actions required of disbarred attorneys. He established his efforts to maintain professional competence by passing the Colorado Bar Exam, by successfully working as a paralegal for the last five years, by taking and passing the Multistate Professional Responsibility Exam, and by continuing to update his understanding of the law through Continuing Legal Education.

■ It is rare that an attorney who engages in criminal conduct and is subsequently disbarred seeks readmission to the bar. It should be rarer still that readmission should be granted. *See In the Matter of the Petition For Reinstatement of David J. Trygstad,* 435 N.W.2d 723, 724 (S.D.1989)(stating that "[a] court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer."). "If a Court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." *Statewide Grievance Committee v. Alan Spirer,* 247 Conn. 762, 725 A.2d 948 (1999). "Although [it has been] suggested that certain offenses are so serious that an 'attorney committing them can never again satisfy the court that he has become trustworthy,' *Matter of Keenan,* 314 Mass. 544, 548–549, [50 N.E.2d 785] [1943] [it is] recognized that no offense "is so grave that a disbarred attorney is automatically precluded

from attempting to demonstrate through ample and adequate proofs, drawn from conduct and social interactions, that he has achieved a 'present fitness,' *In re Kone,* 90 Conn. 440, 442, [97 A. 307] [1916] to serve as an attorney and has led a sufficiently exemplary life to inspire public confident once again, in spite of his previous actions." *In the Matter of Allen,* 400 Mass. 417, 509 N.E.2d 1158, 1160–1161 (Ma.1987), *citing Matter of Hiss,* 368 Mass. 447, 452, 333 N.E.2d 429, 433 (1975). A fundamental precept of our system . . . is that men can be rehabilitated." *Hiss,* 333 N.E.2d at 434. Rehabilitation . . . is a 'state of mind' and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved 'reformation and regeneration.'" *Id., citing March v. Committee of Bar Examrs,* 67 Cal.2d 718, 732, 63 Cal.Rptr. 399, 433 P.2d 191 (1967). Time and experience may mend flaws of character which allowed the immature man to err. *Id.* The chastening effect of a severe sanction such as disbarment may redirect the energies and reform the values of even the mature miscreant. *Id.* There is always the potentiality for reform, and fundamental fairness demands that the disbarred attorney have opportunity to adduce proofs. *Id. See e.g., Hubbard v. Kentucky Bar Association,* 66 S.W.3d 684 (Ky.2001)(attorney readmitted after having been convicted of three felonies, including conspiracy to impede and impair the Federal Election Commission, one count of theft of government property, and one count of obstruction of justice, the attorney having proven that his conduct since disbarment had been of a positive proactive nature and he was worthy of the trust and confidence of the public); *Allen,* 509 N.E.2d at 1160–1161 (attorney reinstated after having been indefinitely suspended following his conviction for conspiracy to commit arson and conspiracy to cause a building to be burned with intent to defraud the insurer).

██ A prior disbarment based upon felonious conduct requires a close examination of the actual misconduct. *See Goff,* 35 P.3d at 495, 496; *In the Matter of Wegner,* 417 N.W.2d 97, 100 (Minn.1987)(holding that the present fitness to practice law of an attorney seeking [readmission] must be considered in light of the offenses for which he or she was

disbarred, *citing Matter of Peterson,* 274 N.W.2d 922, 926 (Minn.1979)). In this case, Avila was disbarred because of the commission of two separate criminal acts. First, Avila knowingly caused the falsification of public records in an ill-conceived effort to avoid the imposition of harsh penalties against Avila's clients. In the second instance of criminal misconduct, Avila knowingly financed the importation of cocaine with the intent that it be subsequently distributed.

Avila's participation in the falsification of public records arose out of his then belief that an attorney's function was to prevail on behalf of his client at any cost. At the time of those events, Avila was thirty-six years old, was practicing by himself, had no mentoring relationship with other attorneys and was driven by a compulsion to secure favorable rulings for his clients. His willingness to violate the law was the direct result of his lack of experience, lack of guidance in the practice of law, misunderstanding of a lawyer's role in the adversarial process and a willingness to break the rules to obtain the desired result.

Avila's involvement in the drug importation and distribution scheme reveals different character deficits. After Avila's immediate suspension from the practice of law, he encountered significant financial difficulties. He was not able to meet his expenses, satisfy the basic needs of his children, pay overdue taxes or maintain the lifestyle which he thought was required of him in his community. In a misdirected effort to raise sufficient monies to meet those needs, Avila knowingly elected to violate the law.

Both of these criminal episodes reveal character deficits present at the time the events transpired which—Avila now acknowledges—rightfully should have prevented him from holding a license to practice law. Both episodes arose out of Avila's willingness to look for easy answers and bend or break fundamental rules of conduct to achieve ends that he personally perceived as desirable. The question before this Hearing Board is whether those character deficits have now been removed so as to insure that similar misconduct does not recur.

Much testimony was offered from Avila and others that he has spent many hours and days reflecting upon his misconduct, both during his incarceration and after. Through such self-examination, Avila is convinced the misconduct will not recur. However, self-examination in the absence of illustrative and independent evidence of fundamental character change is insufficient to establish by clear and convincing evidence that change is real. *Goff*, 35 P.3d at 496 n. 14. In this case, there is, however, other independent and illustrative evidence of fundamental character changes.

Almost immediately after Avila's convictions, he acknowledged the wrongfulness of his misconduct and began the lengthy process of restructuring his life. While incarcerated, Avila continuously maintained a job, assisted other inmates in obtaining an equivalent high school education and maintained a close guiding relationship with both his older son and his minor son. Avila's conduct while incarcerated was sufficiently exemplary that he was allowed to work outside the facility during the last year of his sentence. Upon his discharge to a halfway house, Avila obtained employment and expanded his relationship with his sons. In 1996, Avila was released on parole and immediately secured a job as a paralegal for three lawyers who had maintained contact with him during the years he was incarcerated. As a paralegal, Avila re-immersed himself in the legal profession. He has, under the supervision of other lawyers, met and communicated with clients, conducted legal research, drafted pleadings, evaluated facts and circumstances for his supervisors, and attended numerous continuing legal education programs. Each of the three lawyers for whom Avila has worked as a paralegal have strongly endorsed his effort to be readmitted and have attested to his renewed character and ethical understanding. One of those lawyers has offered Avila a position as an associate attorney should he be readmitted.

More important than the opinion of those for whom he has worked, however, is Avila's own conduct. In an effort to understand the underlying reasons for his criminal behavior, Avila has sought professional evaluation and counseling. He has taken the results of that counseling and applied it to his normal routine. Avila is actively involved in community affairs, continues to assist young adults in obtaining high school equivalency education, participates in youth activities and continues to maintain a close, guiding relationship with his sons.

Possibly the most definitive independent evidence of the change in his character is Avila's presentation to youth groups of his life's misdirection. Now, as a fifty-two year old man, Avila openly describes his descent into criminal conduct, the consequences he endured as a result of that conduct, and the difficulty he has encountered in trying to rebuild his life. Avila's willingness to represent his choices as examples of conduct to avoid to formative youth and to encourage them to make different choices is strong evidence of Avila's genuine understanding of his prior misconduct and real character change.

These facts convince the Hearing Board by clear and convincing evidence that Avila no longer looks for easy answers and recognizes that he is bound by rules of conduct which may not be bent or broken to accomplish a desired outcome. Because he has demonstrated that change in character, the Hearing Board finds that he is rehabilitated.

Avila's passage of the Colorado Bar Examination, the Multi State Professional Responsibility Examination and his special tutoring with Brooke Wunnicke establishes his competence to practice law. By stipulation, the Office of Attorney Regulation Counsel has agreed that Avila has substantially complied with all disciplinary orders.

Although not controlling in this readmission proceeding, it is important to note and significant to the Hearing Board that at the conclusion of all testimony in this proceeding that Mr. Sudler, the Assistant Regulation Counsel, stipulated that Avila should be readmitted to the practice of law.

The evidence having established by a clear and convincing standard that Avila has been rehabilitated, the Hearing Board herein Orders that Avila shall be readmitted to the practice of law. Avila shall appear before

the Presiding Disciplinary Judge within fifteen days of the date of this Order to take the oath of admission and receive an attorney registration number.

### III. ORDER

It is therefore ORDERED:

1. That the Verified Petition for Reinstatement of Nick Avila, Jr. is GRANTED and Avila is readmitted to the practice of law;

2. Avila is ORDERED to appear before the Presiding Disciplinary Judge within fifteen days of the date of this Order to take the oath of admission and to obtain a new attorney registration number;

3. That prior to taking the oath of admission, Avila shall tender $195.00 to the Office of Attorney Registration, fill out an attorney registration form and a COLTAF form;

4. Avila is ORDERED to pay the costs of these proceedings;

5. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Petitioner shall have ten (10) days thereafter to submit a response thereto.