**Michael D. MULLISON, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 01PDJ089.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 16, 2002.

---

Opinion issued by a Hearing Board consisting of JOHN E. HAYES and KATHRYN S. LONOWSKI, both members of the bar, and the Presiding Disciplinary Judge ROGER L. KEITHLEY.

## OPINION AND ORDER READMITTING MICHAEL D. MULLISON, TO THE PRACTICE OF LAW

*ATTORNEY READMITTED TO THE PRACTICE OF LAW*

On October 10, 2002, a readmission hearing was held pursuant to C.R.C.P. 251.29(a) before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members, Kathryn S. Lonowski and John E. Hayes, both members of the Bar. David L. Wood, Esq. represented Michael D. Mullison ("Mullison"). Debora D. Jones, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). The following witnesses testified on behalf of Mullison: Sunita Sharma, Regina W. Adams, Doug Mathre, Robert Schmidt and John K. Nagel, M.D. Mullison testified on his own behalf. Mullison's exhibits 1 through 8 were admitted into evidence.

The Hearing Board considered the testimony and exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact, which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Michael Dean Mullison took the oath of admission and was admitted to the bar of the State of Colorado on November 1, 1985, at-

torney registration number 15169. The events leading to this attorney's disbarment occurred during a time period in which Mullison developed an addiction to cocaine which increased to a level where it destroyed the attorney's personal and professional life.

After graduating from law school, Mullison practiced in Colorado for one year, then relocated to the State of Washington to work for a firm handling no-contest divorce and bankruptcy matters. While working for the firm, in 1988, Mullison agreed to represent a client "on the side" in a contested divorce. Mullison accepted money from this client outside of his employment, and diverted those funds to his own use for drug purchases. When his employer discovered Mullison's "on the side" representation, Mullison's employment was terminated.

Mullison returned to Colorado with his wife and daughter. He did not inform his wife the true reason for the termination of his employment and continued to conceal his drug use from her. He established a solo practice in Longmont where he handled bankruptcy, domestic relations and civil matters. The stress of his solo practice exacerbated his use of cocaine. He charged a relatively small flat fee for bankruptcy work and other matters, but routinely used those fees for drug purchases. His practice became a "shell game" in which he would use fees collected from subsequent clients to pay the filing fees required to complete previous clients' work.

During this time, Mullison represented a client, Kathy Rush, and accepted fees and costs from her to file a petition for dissolution of marriage on her behalf. Mullison converted the fees and costs to his own use and never filed the petition. Later, Mullison forged what purported to be a copy of the decree. Another attorney who had been consulted by the client reported his forgery of the decree. Mullison pled guilty to second degree forgery, a class four felony. He admitted to having used the money paid to him for the purchase of drugs.

In another matter a client retained Mullison and paid him to file a personal bankruptcy action. Mullison never filed the bankruptcy petition, although he misrepresented to the client that it had been filed and that the court date had been set. Mullison pled guilty to felony theft for taking the client's money and failing to perform the agreed-upon legal services. In addition to these two specific instances, in eleven separate additional instances in 1989, Mullison failed to perform legal services while accepting and retaining payment for services.

The State of Washington brought criminal charges against Mullison based on his diversion of client funds for his own use. He pled guilty to attempted theft in the second degree, a misdemeanor, and was subsequently suspended by the Washington Supreme Court. Mullison stipulated to a one year period of suspension (from May 25, 1989 to May 25, 1990) in Washington with an additional two-year period of probation in the event he returned to the practice of law in that state.

Mullison was immediately suspended from the practice of law in Colorado on November 9, 1989, based on the criminal charges in the State of Washington and Mullison's misconduct following his return to Colorado. Thereafter, as a result of a stipulated sanction of disbarment accepted and approved by the Colorado Supreme Court, Mullison was disbarred from the practice of law in the State of Colorado on April 27, 1992. *People v. Mullison*, 829 P.2d 382 (Colo.1992).

Mullison finally admitted to his wife and family that he had a serious cocaine addiction. He began to realize the extent of his addiction, and that it had resulted in the ruin of his personal and professional life. At the same time, he was relieved that he need no longer lie about his addiction.

On April 13, 1990, after entering a plea of guilty to second degree forgery, a class four felony in Colorado arising out of Mullison's forgery of a court document in his representation of Kathy Rush, Mullison was sentenced to six years in community corrections and was ordered to pay restitution in the amount of $7,157.00. Mullison was placed in community corrections in the Longmont, Colorado facility and served one hundred and twenty-nine (129) days as a resident of that facility where he received intensive treat-

ment for his addiction to cocaine. In this facility, Mullison was subjected to detoxification, random testing, counseling, and seminars on remaining drug-free. He developed skills to live without the use of drugs.

After being released from the Longmont facility, Mullison was transferred to Larimer County Community Corrections, and was under its supervision until the termination of his sentence on December 9, 1994. While under its supervision, Mullison worked long hours in non-legal positions including delivering milk in the evening and furniture in the daytime. He later obtained paralegal positions. He supported his wife and children, and earned the funds to make full restitution as ordered in both the criminal and disciplinary proceedings.

As part of his sentence, Mullison entered drug treatment in the "New Beginnings" program in Fort Collins, Colorado in 1989, involving weekly meetings, consultation with a caseworker, drug addiction after care, and random drug testing. New Beginnings helped Mullison to change his behavior and thinking and helped him begin to piece his life back together. He was also involved in Narcotics Anonymous on a daily basis from 1989 to 1997. He assisted in establishing a Fort Collins chapter of "Coke Anon" and spoke to college students and school groups about cocaine addiction. As a result of these rehabilitative programs, Mullison came to understand that his cocaine addiction caused him to act dishonestly and exercise extremely poor judgment.

Mullison's family relationship was badly harmed by his cocaine habit and the resulting consequences. During the years following his criminal conviction, Mullison and his wife—also an attorney—separated twice. Following those separations, both Mullison and his wife attended counseling, devoted substantial effort to their relationship, and were able to reestablish the marriage. Mullison has maintained a close relationship to his children, spending a great deal of time with them, coaching basketball teams and attending school events.

In 1991 Mullison, through his wife, sought paralegal employment. Richard K. Blundell hired Mullison as a paralegal in the area of worker's compensation law, personal injury, and social security matters. Mullison worked for Blundell in that capacity from May 1991 until September 1995. Mullison assisted Blundell in various aspects of the law practice and had regular supervised client contact. In 1995, Mullison left Blundell's employment to accept employment with attorney Steve Bristol. Upon Bristol's death in January 1996, Regina Adams acquired Bristol's practice and continued Mullison's employment. Mullison continues to work for Adams in generally the same areas of practice that he had previously worked in with Blundell. He engages in legal research, maintains client files, prepares forms, contacts clients, performs extensive research and prepares legal briefs under the supervision of Adams. He has been responsible for delivering funds to clients, performing disbursement of payments on cases, and depositing funds in the firm account. Mullison's work with Adams has been exemplary; he is punctual, organized, responsible and demonstrates attention to detail. If readmitted, Adams intends to offer an associate position to Mullison.

On December 9, 1994, Mullison sought early termination of his sentence on the grounds that he fully complied with all requirements of the Community Corrections program and the court order, completed all drug treatment, maintained his after-care program, remained gainfully employed for the duration of his sentence, and maintained his sobriety, which was verified by random drug testing. The court granted early termination of his sentence.

As part of its disbarment order, the Colorado Supreme Court required Mullison to pay the costs of the disciplinary proceeding in the amount of $428.09 within thirty days. Due to a misunderstanding of the disciplinary order and the costs ordered in the criminal proceeding, Mullison did not timely pay that amount within the prescribed thirty days. Pursuant to C.R.C.P. 241.21(d)[1] Mullison was also required to file an affidavit

---

1. C.R.C.P. 241.21 was replaced by C.R.C.P. 251.29 effective January 1, 1999.

with the Supreme Court setting forth all matters he had pending and attesting that he had fully complied with the provisions of the order of disbarment and the Rule.[2] Mullison failed to file the affidavit, erroneously believing that because he had closed his practice and had no matters pending, he was relieved from the obligation to comply with this Rule. The People stipulated that Mullison's payment of costs plus statutory interest prior to the hearing constitutes substantial compliance with the Court's Order. The People also stipulated that Mullison had substantially complied with all prior disciplinary orders and relevant rules.

The disbarment order also required Mullison to pay restitution to eleven separate clients for a total amount of $3,122. Restitution was also ordered as part of the criminal proceeding in Boulder County, Colorado (Case No.1989CR12121) which included restitution to the same persons to which payment was owed pursuant to the disbarment order. Mullison made all reimbursement payments required under the Boulder District Court's 1990 Judgment of Conviction in the amount of $3,385.14.[3] Mullison has completed all drug treatment requirements from the Boulder County matters and has scrupulously maintained adherence to a drug-free lifestyle.

Mullison sat for and passed both the May 2002 Colorado Bar Examination and the Multistate Professional Responsibility Exam. He has remained current in the law by regularly reading *The Colorado Lawyer*, attending legal seminars throughout his period of employment, keeping abreast of the law through reading of case law, ethics opinions and disciplinary cases, and other legal publications.

Mullison candidly acknowledged and admitted that his disbarment for dishonesty and conversion of client funds was justified. He acknowledged the harm that he caused to his clients and the legal profession, and has paid reimbursement to his clients in full. He acknowledged the harm he caused to his wife and family, and is committed to setting an example to his children of the harm that can result from drug use. He forthrightly acknowledged and admitted that his prior conduct was deceptive, that he had, but ignored, opportunities to obtain help with his problems, and that he engaged in "rock bottom conduct."

Mullison is now forty-two years of age, does not suffer from any physical or emotional disorder, and has not used illegal drugs since November 1, 1989. At the conclusion of the evidence, the People stipulated to Mullison's readmission.

## II. CONCLUSIONS OF LAW

Michael D. Mullison is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

■ C.R.C.P. 251.29(a) provides:
**Readmission After Disbarment.** A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission, properly verified, with the Presiding Disciplinary Judge, and furnish a copy to Regulation Counsel. Thereafter, the petition shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter. A Hearing Board shall consider every petition for readmission and shall enter an order granting or denying readmission.

■ *People v. Klein*, 756 P.2d 1013, 1016 (Colo.1988) interprets the language of the prior rule governing readmission to the bar,

---

**2.** At the time Mullison was required to file the affidavit he was not practicing law and had no clients. Consequently, no clients were exposed to potential harm as the result of his failure to file the required affidavit.

**3.** Mullison actually paid $7,157 as restitution in the criminal proceeding, but the database currently available reflects only payments made after 1993.

C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

> [A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondent's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondent's life, and the respondent's recognition of the seriousness of his previous misconduct.

■ An attorney seeking readmission following disbarment must establish compliance with the provisions of C.R.C.P. 251.29(c). *Goff v. People*, 35 P.3d 487 (Colo.PDJ, 2002). Those provisions are as follows:

> The facts other than the passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;
>
> Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended attorneys;
>
> Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

Mullison filed a Verified Petition for Readmission on October 1, 2001 and paid the required filing fee. More than eight years have elapsed since the disbarment became effective.

Mullison established his efforts to maintain professional competence by passing the Colorado Bar Exam and the Multistate Professional Responsibility Exam. He has also established proficiency in the law while working as a paralegal for the last eleven years, conducting legal research and preparing briefs, maintaining client files, preparing forms, contacting clients, performing disbursements of payments on cases, and depositing the funds in the firm account. He has remained current in the law by attending Continuing Legal Education seminars and reading legal journals. Mullison has demonstrated his trustworthiness as an employee over an extended period of time by accepting and successfully completing work assignments, and has demonstrated honesty and integrity in the handling of both personal and professional monetary accounts.

■ Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. *Goff,* 35 P.3d at 495, 496. The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. *Id.* It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming which resulted in the discipline imposed. *Id.,citing* C.R.C.P. 251.29(c)(5); *Tardiff v. State Bar,* 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980)(*citing Roth v. State Bar,* 40 Cal.2d 307, 253 P.2d 969, 972 (1953))(holding that in an application for reinstatement ... the proof presented must be sufficient to overcome the court's former adverse judgment of [the] applicant's character). A prior disbarment based upon felonious conduct requires a close examination of the actual misconduct. *Id.; In the Matter of Wegner,* 417 N.W.2d 97, 100 (Minn.1987)(holding that the present fitness to practice law of an attorney seeking [readmission] must be considered in light of the offenses for which he or she was disbarred, *citing Matter of Peterson,* 274 N.W.2d 922, 926 (Minn.1979)); *see also Avila v. People,* 52 P.3d 230, 234 (Colo.O.P.D.J. 2002) 2002 Colo. Discipl. LEXIS 53. In this case, Mullison was disbarred due to the commission of two criminal acts. First, Mullison knowingly caused the falsification of a court document in an effort to hide from the client that he had not performed the work he had been retained to complete. In the second instance of criminal misconduct, Mullison knowingly utilized client funds in order to finance his cocaine habit.

Both of these criminal episodes reveal character deficits present at the time the events transpired. Both episodes and the additional episodes giving rise to the disbarment arose from Mullison's placing his cocaine addiction above his professional responsibilities to his clients. In order to be readmitted to the practice of law, Mullison must establish that those character deficits present at the time of his misconduct have now been removed so as to insure that similar misconduct does not recur.

Mullison has established that he has undergone a fundamental character change. *Goff,* 35 P.3d at 496 n. 14. Almost immediately after his convictions, Mullison acknowledged the wrongfulness of his misconduct and began the lengthy process of restructuring his life. During his sentence in community corrections after the initial one hundred and twenty-nine day period, he continuously maintained jobs to support his family and earn the funds necessary to pay restitution. He pursued extensive programs and counseling aimed at rehabilitation and recovery. He has applied these concepts successfully to his routine life for over eleven years. The period of time which has transpired between Mullison's last submission to his addiction and the time of this readmission proceeding, eleven years, is a significant factor. It independently demonstrates that Mullison has developed sufficient character to control his addictions and conform his personal conduct to the standards required by our society.

Mullison has engaged in community service by sharing the story of his professional and personal experiences with college students and school groups, informing them of the hazards of cocaine use. He was dedicated to Narcotics Anonymous and assisted in developing a chapter of "Coke Anon" in Fort Collins. His free time is currently focused on raising his children and coaching them and other children in sports. He has worked hard to overcome his former behavior and win back the trust of those he previously hurt and deceived. In that regard, he has focused on repairing his marital relationship, and providing honesty and guidance to his children by playing an active role in their upbringing.

Mullison has candidly acknowledged, expressed and demonstrated sincere remorse for his conduct. He did not attempt to use his drug addiction as an excuse for his previous behavior but at the same time, he acknowledged that his addiction played a major role underlying the actions leading to his disbarment.

By stipulation, the Office of Attorney Regulation Counsel has stipulated that Mullison has substantially complied with all rules pertaining to the underlying disciplinary matter and all disciplinary orders. That stipulation was accepted.

These facts demonstrate by clear and convincing evidence that Mullison no longer entertains the thought of using drugs to alleviate the difficulties in life, and is committed to return to the profession. Because Mullison has demonstrated that change in character, he is rehabilitated.

The evidence having established by a clear and convincing standard that Mullison has been rehabilitated, it is Ordered that Mullison shall be readmitted to the practice of law. Mullison shall appear before the Presiding Disciplinary Judge within thirty-one days of the date of this Order to take the oath of admission.

Substance abuse and/or addiction poses an ever present threat of recurrence. Although the evidence presented is both clear and convincing that Mullison is presently free from substance abuse, the remote possibility of relapse warrants the imposition of conditions upon Mullison's readmission to the practice of law as an added measure of protection to the public.

### III. ORDER

It is therefore ORDERED:

1. Mullison's Petition for Readmission is GRANTED;

2. Mullison shall be subject to not more than fifteen random drug/urinalysis tests during a period of twelve months from the date of this Order. The Office of Attorney Regulation Counsel shall initiate such tests at such times as they may elect.

3. Mullison is ORDERED to appear before the Presiding Disciplinary Judge within thirty-one days of the date of this Order to take the oath of admission; [4]

4. Mullison is ORDERED to pay the costs of these proceedings and the costs of all random drug testing;

5. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Petitioner shall have ten (10) days thereafter to submit a response thereto.

4. Prior to taking the oath of admission, Mullison shall pay all necessary fees to the Office of Attorney Registration.