**Gertrude A. SCORE, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 07PDJ039.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 4, 2008.

not rise to the level of clear and convincing    evidence.

On December 4–5, 2007, a Hearing Board composed of DAVID A. HELMER and PAUL J. WILLUMSTAD, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a Readmission Hearing pursuant to C.R.C.P. 251.29(d) and 251.18. CECELIA A. FLEISCHNER and LAURA L. REVERCOMB appeared on behalf of Gertrude A. Score ("Petitioner"). Lisa E. Frankel and Julie M. Schmidt appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). The Hearing Board now issues the following Opinion and Order Re: Readmission Pursuant to C.R.C.P. 251.29.

## OPINION AND ORDER RE: READMISSION PURSUANT TO C.R.C.P. 251.29

### I. ISSUE

An attorney seeking readmission must prove, among other things, "rehabilitation" by clear and convincing evidence. Rehabilitation is an *overwhelming change of character* from the conduct that led to disbarment, evidenced by positive and meaningful action. Petitioner provided evidence of a number of activities that demonstrate self-sacrifice and community involvement. She also appeared genuinely remorseful while accepting responsibility for the results of her past misconduct. Has Petitioner demonstrated clear and convincing evidence of rehabilitation?

### DECISION OF THE HEARING BOARD: ATTORNEY READMITTED.

### II. PROCEDURAL HISTORY

On June 15, 2007, nearly twenty years after the effective date of her disbarment, Petitioner filed a "Verified Petition for Reinstatement and Readmission." The People filed "Respondent's Answer to Petitioner's Verified Petition for Reinstatement and Readmission" on June 20, 2007. The People agreed to the technical sufficiency of the petition, but took no position regarding Petitioner's readmission pending an investigation concerning her qualifications for readmission.

Following the presentation of evidence, the People conceded Petitioner's fitness to practice law. In final argument, however, they argued that Petitioner failed to demonstrate rehabilitation by clear and convincing evidence.[1]

### III. FINDINGS OF FACT

The Hearing Board finds the following facts by clear and convincing evidence. The parties submitted a "Stipulation of Facts," which is incorporated in the Hearing Board's findings below.

Petitioner was admitted to the Bar of the Colorado Supreme Court on September 17, 1963. On July 12, 1988, the Colorado Supreme Court approved a recommendation of the Supreme Court Grievance Committee that Petitioner be disbarred from the practice of law. See People v. Score, 760 P.2d 1111 (Colo.1988).[2] At the time of her disbarment, Petitioner worked as a law partner of Robert McDougal.

### Petitioner's Disbarment

From 1982 to 1984, while Petitioner assumed the duties of co-guardian and co-conservator for Teddy Carr Jones, a mentally incompetent person with a "sizable estate," Petitioner engaged in the following conduct:[3]

---

1. The People also argued that Petitioner failed to show compliance with C.R.C.P. 251.28, winding up affairs following disbarment. Nevertheless, they do not argue that this factor alone should be sufficient to deny her petition for readmission.

2. See the People's Exhibit D.

3. See People v. Score, 760 P.2d 1111 (Colo.1988).

- After appointment as a co-conservator, Petitioner and Mr. McDougal prepared Mr. Jones' will and named themselves as trustees of his estate and created a ten-year trust for Mr. Jones' sole heir, despite the fact that the heir was competent to handle his own affairs.
- Petitioner took personal property from Mr. Jones' residence.
- Petitioner took a diamond ring from a safety deposit box that was part of the estate.
- Petitioner intentionally excluded $32,960.55 from the original inventory in the probate court.
- Petitioner and Mr. McDougal *falsely* informed St. Anthony's Hospital that Mr. Jones had no medical insurance or income sufficient to pay his outstanding bill of $24,194.60.[4]
- Petitioner agreed to the sale of Mr. Jones' car to Mr. McDougal's son without notice to Mr. Jones and for a fraction of its value.
- Petitioner made inaccurate statements on the amended inventory regarding Mr. Jones' stocks.
- Petitioner and Mr. McDougal entered into a rental agreement with Mr. Jones to rent and manage one of Jones' properties for a 10% commission.

The Colorado Supreme Court made numerous findings concerning Petitioner's "mishandling of Jones' estate." In particular, the Colorado Supreme Court found Petitioner failed to obtain title determinations on Mr. Jones' property, failed to make appraisals, failed to develop investment strategies, failed to inventory the household goods for two properties, failed to record letters of conservatorship with the clerk of the court, failed to procure medical insurance for Mr. Jones, and failed to secure an insured and licensed driver for Mr. Jones.

Based upon these stipulated facts, the Colorado Supreme Court found Petitioner violated the following rules:[5] neglected a legal matter (DR 6–101(A)(3)); engaged in conduct prejudicial to the administration of justice (DR 1–102(A)(5)); failed to disclose matters that she was required by law to disclose (DR 7–102(A)(3)); engaged in conduct that damaged a client (DR 7–101(A)(3)); engaged in conduct prejudicial to the administration of justice (DR 1–102(A)(5)); engaged in conduct involving dishonesty (DR 1–102(A)(4)); acted in violation of a criminal law (C.R.C.P. 241.6(5)); acted with gross negligence in representing the estate (DR 6–101(A)(3)); acted incompetently when she represented the estate (DR 6–101(A)(1)); and entered into a business transaction without full disclosure (DR 5–104(A)).

The Colorado Supreme Court disbarred Petitioner and relied on the following ABA *Standards:* 4.1 (converting client funds); 4.4 Lack of diligence; and 4.51 (lack of competence). A violation of each of these standards presumptively calls for disbarment.

### Petitioner's Testimony

Petitioner was born on April 22, 1927. She has resided in Denver at the same address for the past sixty years. She practiced law for twenty-five years, half of that time as a solo practitioner, and the other half as a law partner of Robert McDougal. She enjoyed the practice of law and testified she did good work before her disbarment. If reinstated, Respondent plans to practice with her son and focus on the quality of her representation. She will not, as in the past, take on more cases than she can competently handle.[6]

With reference to the conduct that led to her disbarment, Petitioner believes that she acted with such gross negligence that it equated to dishonesty. She took on too much responsibility when her law partner's health declined, leaving her with a greater burden of the legal work than she had handled before his illness. Petitioner testified she

---

4. As a result of these misrepresentations, Mr. Jones was sued and the probate court eventually authorized payment in full to the hospital.

5. "The parties (in the disciplinary action) entered into a stipulation of facts and the respondent admitted that she engaged in multiple acts of misconduct with respect to her representation of Teddy Carr Jones. . . ." *People v. Score,* 760 P.2d 1111 at 1112.

6. In her deposition, however, Petitioner stated that she would likely become a solo practitioner.

would never again make this mistake. With regard to the Colorado Supreme Court's finding that she took a diamond ring belonging to the estate from a safety deposit box, she strenuously contests this finding.

Petitioner believes it would be dishonest to admit she took the diamond ring, despite her understanding that the Hearing Board might consider it a failure to accept responsibility for her misconduct. Nevertheless, she acknowledges the stipulated facts outlined in the Colorado Supreme Court's opinion, including the finding that she took the diamond ring, and that those findings are binding in this proceeding.

Petitioner acknowledges the People have no record that she wound up her client matters as required by C.R.C.P. 251.28 and C.R.C.P. 251.29. However, she testified that she wound up client affairs following her immediate suspension. She also testified that her own records showing compliance were destroyed when her hot water heater broke.

Petitioner acknowledges that she could have petitioned for readmission nearly twelve years ago. She instead waited, reevaluated her life, and devoted herself to family responsibilities. Petitioner took care of her elderly mother from the time her mother was ninety years old and continued this care until her mother died at the age of 106. She also supported her son while he attended Georgetown University Law School.

Petitioner also became increasingly active in her church, the Macedonia Baptist Church, located in northeast Denver. Petitioner believes her activities at the church have made her a better person. She has helped an elderly woman by providing her with food and taking her to New Orleans to visit her family. She also takes neighbors to church on Sundays. Petitioner believes these "acts of kindness" help demonstrate her rehabilitation.

Petitioner also serves as a member of "a circle" within the church. Members of Petitioner's circle are volunteers who tend to the congregation's health needs. Although Petitioner is not a leader of the circle, she takes blood pressure readings for members of the congregation and is certified in CPR. Petitioner also distributes food to the homeless every Friday night and has done so for the last two to three years.

Petitioner studied for and passed the Colorado Bar Examination and completed approximately seventy-five hours of CLE from 2005 to 2007. She audited most of these courses, attending them with her son, including a tax program at the University of Colorado Law School. She also reads the Colorado Bar Association's Colorado Lawyer publication and views many of its webcasts. Petitioner estimates she has spent thirty hours a week in these studies over the past two years.

Petitioner admits, however, she has not been employed for the last twenty years and has lived on her social security income and money her son provides from rental properties she manages for him. Further, she has not performed any paralegal work or other legal work of any kind in the last twenty years. She has consciously steered clear of paralegal work to avoid any claim that she engaged in the unauthorized practice of law. Finally, she participated in a high school mock trial competition as a judge and mentor.

Although she has not become acquainted with her son's calendaring system or the office systems programs he uses, Petitioner says she will learn them and use them under her son's direction if allowed to practice law again. Petitioner testified that she plans to limit her practice to family law and criminal law. Furthermore, Petitioner at least initially plans to limit her appearances to county court. She expects and intends to be monitored by her son in all the legal work she undertakes in her new practice. Petitioner will not engage in a volume practice as she did in the past.

Petitioner intends to practice under the guidance of her son and she endeavors to perform quality work for a limited number of clients. She previously built a practice on case referrals and again intends to develop clients in this way. Petitioner believes the public would be protected, because she has lived an honest life since her disbarment, learned from her mistakes, and will only practice in a limited number of cases under the direction of her son.

Petitioner testified that she is remorseful and embarrassed for her misconduct. She has not told members of her church or others about her past misconduct unless they specifically asked her. At the same time, she learned from her mistakes and is now ready to "do good work for good people".

### Petitioner's Witness—DD

DD is a single mother who receives a monthly disability check from Social Security and who needs a trustee to manage these funds. Petitioner accepted the responsibility of managing these funds without charge. Petitioner meets with DD once a month and distributes the SSDI money to her to pay the rent and phone bill. DD considers Petitioner to be a "good friend" who always treats her fairly. She also appreciates Petitioner's personal interest in DD's 8–year–old son.

DD did not know Petitioner had been disbarred from the practice of law. However, the disclosure of this information does not change DD's opinion that Petitioner is an honest person who would make a good lawyer. DD would hire Petitioner as an attorney because Petitioner always treated her with honesty and respect.

### Dr. Paul Melvin Martin

Dr. Martin is an interim pastor at Zion Church in Los Angeles, California. He previously served as the senior pastor at the Macedonia Baptist Church from 1990–2007. He is affiliated with numerous organizations on a state and national level, including the Stapleton Development Project in Denver.

Dr. Martin knew Petitioner for sixteen years as a parishioner of the Macedonia Baptist Church, which provided religious services for up to four hundred members each week. Dr. Martin also knew Petitioner from her participation in a travel group affiliated with the church. This group of approximately forty parishioners traveled to Israel, Egypt, and Rome and studied the Bible. During this trip, Petitioner was baptized in the River Jordan. Dr. Martin testified that Petitioner was a pleasant participant in this mission.

Dr. Martin spoke of Petitioner's activities in helping members of the church. He wrote a letter on behalf of Petitioner at the request of Mr. Williams, Petitioner's son, a respected member of the Macedonia Church. Dr. Martin felt "privileged" to write a letter on Petitioner's behalf, despite the fact he did not know she had been disbarred from the practice of law. He nevertheless believes Petitioner should be readmitted because she is an amazing woman: bright, quiet, humble, not overbearing, caring, someone who reaches out, strong, and self-sufficient. If she meets all of the requirements of the rules, Dr. Martin believes she should be readmitted to the practice of law.

### Dr. Louise Barger

Dr. Barger has known Petitioner for twenty-four years as a parishioner of the Macedonia Baptist Church. Dr. Barger is not a minister at the church, but oversees its administration as a regional manager. She is still involved with the church and performs consulting work every Sunday.

Dr. Barger knows Petitioner as a regular attendee at the Macedonia Baptist Church and a volunteer who tends to the church's health needs as a "nurse" monitoring blood pressure, and as a member of a travel group that studied in Israel, Rome, and Egypt. Dr. Barger traveled with this group as well.

Dr. Barger recently learned of Petitioner's disbarment, but nevertheless believes Petitioner is a person of integrity, consistency, and intellect, who has a great desire to help those who might not otherwise be represented. Dr. Barger testified that the best evidence of Petitioner's good character is the son that she raised on her own. According to Dr. Barger, Petitioner raised her son and kept him from gang activity. Her son is a talented, intelligent, compassionate lawyer, and a respected member of the church. Based upon these attributes, Dr. Barger believes Petitioner should be given an opportunity to serve her community as a lawyer.

### Shelley Arthur Williams

Shelley Arthur Williams is the 41–year–old son of Petitioner. He grew up in Denver, attended Metro State College, and Georgetown University Law School. He was admitted to the practice of law in Colorado in 1996. Mr. Williams is a retired Major from the United States Army. He served as a Special

Services Officer with the Green Berets in Southeast Asia and Korea. He was honorably discharged in 2002 and has practiced law for the past twelve years. At present, he has six active cases in his practice and does not intend to increase that number regardless of whether or not Petitioner is readmitted and practices law with him. He regularly attends the Macedonia Baptist Church and serves on its board of trustees.

It is Mr. Williams' "fondest wish and desire" to practice with his mother if she is readmitted to the practice of law. He attributes his success to her guidance and direction. He views Petitioner as an excellent potential asset to his practice, because of her experience, integrity, and character. Mr. Williams plans to monitor Petitioner if she is readmitted to the practice of law. He will teach Petitioner how to use the calendar, case management system, and other technology he uses in his law firm.

Mr. Williams also testified that Petitioner's disbarment was not a secret in their home. Petitioner candidly expected to be disbarred and accepted the outcome. Following her disbarment, Mr. Williams noted that Petitioner took her disbarment with a healthy dose of humility. She did not blame others. Instead, she conveyed to him that the practice of law is a privilege and not a right. Mr. Williams offered his testimony both as Petitioner's son and as an officer of the court.

Nevertheless, Mr. Williams believes Petitioner's misconduct was out of the ordinary for her. She had always been hardworking and honest. He viewed her failure as one in which she took on too much responsibility and acted with gross negligence because of her lack of diligence. Petitioner was unequivocally honest in her experience with him.

Mr. Williams also recognizes that the Colorado Supreme Court found Petitioner acted dishonestly. Though he is willing to mentor Petitioner, he admittedly sees her as his heroine and inspiration. In his view, she is well suited to practice because of her intelligence and energy. Practicing again will allow Petitioner to regain a part of herself. Mr. Williams is willing to stake his name and reputation on Petitioner if she is readmitted to the practice of law.

## IV. LEGAL ANALYSIS

C.R.C.P. 251.29. provides in relevant part:

(a) Readmission After Disbarment.

A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission, properly verified, with the Presiding Disciplinary Judge, and furnish a copy to the Regulation Counsel. Thereafter, the petition shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter. A Hearing Board shall consider every petition for readmission and shall enter an order granting or denying readmission.

*People v. Klein*, 756 P.2d 1013, 1016 (Colo. 1988) interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria for a hearing board to consider before reaching a decision on readmission. *Klein* requires an evaluation of numerous factors bearing on the Petitioner's state of mind and ability, such as:

- Character;
- Conduct since the imposition of the original discipline;
- Professional competence, candor and sincerity;
- Recommendations of other witnesses;
- Present business pursuits of the Petitioner;
- The personal and community service aspects of the Petitioner's life; and
- Petitioner's recognition of the seriousness of his or her previous misconduct.

Rehabilitation for purposes of attorney reinstatement and readmission to the bar has been defined as "the reestablishment

of the reputation of a person by his or her restoration to a useful and constructive place in society." *Goff v. People*, 35 P.3d 487, 494–95 (Colo.O.P.D.J. 2000),[7] *citing* Avrom Robin, *Character and Fitness Requirements for Bar Admission in New York*, 13 TOURO L. REV. 569, 583 (1997) (*quoting In re Cason*, 249 Ga. 806, 294 S.E.2d 520, 522–23 (1982)). Other factors are the applicant's age at the time of the offense and the likelihood that the applicant will repeat the behavior in the future. *Id.* Courts, including those in Colorado, focus upon the applicant's current mental state. *Id.; See Klein*, 756 P.2d at 1016.

Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. *Goff*, 35 P.3d at 495–96; *Avila v. People*, 52 P.3d 230, 234 (Colo.O.P.D.J. 2002). The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. *Id.* It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming, which resulted in the discipline imposed. *Id.*

Readmission, however, will not be granted automatically because the applicant has not engaged in further misconduct following disbarment. *See In re Sharpe*, 499 P.2d 406, 409 (Okla.1972). The most important consideration must be protecting the public welfare. Each case for readmission must be reviewed on its own merits, and will fail or succeed on the evidence presented and the circumstances peculiar to that case. *Goff*, 35 P.3d at 495, *citing In re Cantrell*, 785 P.2d 312, 313 (Okla.1989).

While the Hearing Board should consider each case on its own merits, the evidence show that rehabilitation has already occurred, not that it may occur in the future. While an order granting readmission may include conditions, which must be followed by the readmitted attorney, it is a prerequisite to any such order that the attorney has already been successfully rehabilitated. *See* C.R.C.P. 251.29(b). Proof of anticipated changes will not satisfy this requirement. *See Goff*, 35 P.3d at 495.

Nevertheless, no misconduct "is so grave that a disbarred attorney is automatically precluded from attempting to demonstrate through ample and adequate proofs, drawn from conduct and social interactions, that he has achieved a 'present fitness,' to serve as an attorney and has led a sufficiently exemplary life to inspire public confident [sic] once again, in spite of his previous actions." *Avila*, 52 P.3d at 235, citing *In re Kone*, 90 Conn. 440, 442, 97 A. 307 (1916) and *In the Matter of Allen*, 400 Mass. 417, 509 N.E.2d 1158, 1160–61 (1987).

"Rehabilitation … is a 'state of mind' and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved 'reformation and regeneration.' " *Id., citing March v. Committee of Bar Examiners*, 67 Cal.2d 718, 732, 433 P.2d 191, 63 Cal.Rptr. 399 (1967).

While community and personal service to others is an important element of rehabilitation, it is not the only matter that this Hearing Board must consider. This Hearing Board must also consider Petitioner's conduct and business pursuits since she was disbarred from the practice of law. *Klein*, 756 P.2d at 1016. Petitioner has managed her son's real estate for the past twenty years while living on social security benefits and the money her son provides her.[8] She took care of her aging mother, helped her son through law school, and traveled to Rome, Egypt, and Israel while she studied the Bible. She has also helped DD and members of her church with acts of care and compassion. While these activities are praiseworthy and support her claim of good character, they do not, standing alone, show rehabilitation by clear and convincing evidence.

When a lawyer is disbarred, the rehabilitation process begins with recognition of the

---

7. "The rationale of the Hearing Board in a particular case can neither serve as *stare decisis* precedent for future cases nor constitute the law of the jurisdiction." *In re Roose*, 69 P.3d 43, 48 (Colo.2003).

8. *See* Petitioner's stipulated Exhibit H. Petitioner has not filed state or federal income taxes for each of the past five years. Petitioner's income was insufficient to require filing.

seriousness of the conduct that led to the disbarment. The Colorado Supreme Court's opinion, to quote Counsel for Petitioner, was "scathing." The Colorado Supreme Court not only found that Petitioner engaged in gross negligence, but that she intentionally converted client property including a diamond ring. Petitioner, on the other hand, characterizes her conduct in the matter as gross negligence arising from her inability to keep up with numerous matters that fell on her shoulders when Mr. McDougal's health failed him. This position, at a minimum, raises a question as to whether Petitioner recognizes the seriousness of her past conduct.

Nevertheless, the Hearing Board finds Petitioner accepts the gravamen of the Colorado Supreme Court's opinion and findings. Most important, Petitioner accepts full responsibility for the harm she caused the estate of Mr. Jones. She recognizes the seriousness of her misconduct and that disbarment was the appropriate sanction for her misconduct. The clear and convincing evidence is that she stated she would make amends to the public for her past misconduct by providing legal services to those who would not otherwise be able to obtain counsel and she will do so with a manageable number of cases under the supervision of a monitor.

Thus, Petitioner has demonstrated by positive and meaningful action an *overwhelming change of character* from the conduct that led to disbarment. In addition, Petitioner has demonstrated a strong desire to make amends for the conduct that led to her disbarment. She plans to serve the community in northeast Denver and to focus on quality work.

The Hearing Board recognizes that it has been twenty years since Petitioner engaged in the practice of law. With this in mind, the Hearing Board finds that it is necessary to monitor Petitioner's practice and trust accounts for a period of three years.

In conclusion, Petitioner has offered her own testimony, that of her son, respected leaders of her church, as well as DD. There being no evidence to the contrary, this testimony shows clear and convincing evidence that Petitioner has provided meaningful personal and community service and has realized a overwhelming change in her character.

## V.  ORDER

1. The Hearing Board **GRANTS** the Verified Petition for Readmission filed by Petitioner **GERTRUDE A. SCORE.** Petitioner **SHALL** contact the Office of Attorney Registration within twenty (20) days of the date of this order and comply with all necessary conditions of readmission required of a "newly admitted attorney" which include the payment of registration fees, completion of requisite paperwork, obtaining a new attorney registration number, and appearing before the Presiding Disciplinary Judge to take the oath of admission. The Court will issue an "Order and Notice of Readmission Pursuant to C.R.C.P. 251.29(a)" upon Petitioner's successful compliance with the above conditions.

2. A practice monitor acceptable to the People **SHALL** quarterly monitor Petitioner's practice and trust accounts for three years from the date of this order.

3. Petitioner **SHALL** pay the costs of these proceedings. The People **SHALL** submit a Statement of Costs within fifteen days of the date of this Order. Petitioner shall have ten days to file a response.