In the Matter of the Application for the REINSTATEMENT OF James L. WEGNER, as an Attorney at Law of the State of Minnesota.

No. C1–79–50111.

Supreme Court of Minnesota.

Dec. 31, 1987.

Edward Kautzer, St. Paul, for appellant.

Betty Shaw, St. Paul, for respondent.

PER CURIAM.

On December 21, 1979, petitioner James L. Wegner was disbarred as a result of his participation in a conspiracy to smuggle marijuana into the United States during 1975 and 1976. *In the Matter of the Application for Discipline of James L. Wegner (Wegner I),* 291 N.W.2d 678, 679 (Minn. 1979). On a petition for reinstatement, a three-member panel of the Board of Professional Responsibility voted 2–1 for denial of reinstatement. The matter is now before this court with the director of the Board of

Professional Responsibility opposing reinstatement. On the facts of this case, we will allow reinstatement only if respondent meets certain conditions precedent set forth below.

Petitioner, currently 53 years old, was admitted to practice law in Minnesota in 1963. Petitioner practiced law with his father and one other attorney, Derck Amerman, in northeast Minneapolis. In 1975, petitioner became involved in a conspiracy to smuggle marijuana into the United States. He participated by purchasing vehicles to be used in the smuggling, driving vehicles into Mexico and returning with marijuana, and recruiting other drivers, some of whom were his clients.

As a result of this criminal conduct, petitioner was disbarred on December 21, 1979. The facts are set out in more detail in the disbarment proceedings. *Wegner I*, 291 N.W.2d 678. As a mitigating factor, petitioner claimed that his excessive use of alcohol[1] impaired his judgment although he did appreciate the criminality and wrongfulness of his acts. Petitioner admitted that he was an alcoholic and entered a treatment facility in Chanhassen in 1982. Petitioner testified that this treatment was successful and he has remained chemical-free.

Since his release from prison, petitioner has had the following employment record:

1980–82: Manager of Closing Department, Realty World–Bellco;

1982–83: Automobile sales, Jay Kline Chevrolet;

1983–84: Residential loan officer, Northland Mortgage Co.;

1985: Automobile sales, Bain Co.;

1985: Partner in medical supply business, Minnesota Biofeedback, Inc.;

1986–87: Office manager, Lawrence R. Pebbles & Associates Law Offices.

Pursuant to Rule 18 of the Rules on Lawyers Professional Responsibility, Wegner filed a petition for reinstatement to the practice of law. The director of the Lawyers Professional Responsibility Board opposed the petition and the matter was referred for a hearing before a three-member panel. The panel, in a 2–1 decision, recommends denial of reinstatement. Petitioner maintains that he has demonstrated a significant change in his moral character, justifying his reinstatement to the practice of law. Although the director admits that petitioner has shown a change in moral character by clear and convincing evidence, the director, nevertheless, recommends denial of reinstatement based on insufficient passage of time since the misconduct and the seriousness of the misconduct. At oral argument, the director recommended that respondent not be eligible for reinstatement for at least 2 more years.

■ The standard for determining whether a disbarred attorney should be reinstated focuses on the moral character of the petitioner. The petitioner must "establish by clear and satisfactory evidence * * * that [he] has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited." *In re Smith*, 220 Minn. 197, 201, 19 N.W.2d 324, 326 (1945) (citations omitted). *See also In re Discipline of Swanson (Swanson II)*, 405 N.W.2d 892, 893 (Minn.1987) (petitioner's burden of proof to justify reinstatement is to establish a moral change by clear and convincing proof). Although the court in *Smith* called this the "decisive inquiry," subsequent case law indicates that we should also consider other factors such as petitioner's consciousness of the wrongfulness of his conduct, *Swanson II*, 405 N.W.2d at 893; the length of time since the misconduct and disbarment, *Application of Swanson (Swanson I)*, 343 N.W.2d 662, 665 (Minn.1984); the presence of physical or psychological illness or pressures which were susceptible to correction, *In re Ossanna*, 288 Minn.

---

**1.** Petitioner testified that he was drinking about one quart of alcohol per day during the height of his involvement in the conspiracy.

541, 542, 180 N.W.2d 260, 261 (1970); and the seriousness of the original misconduct, *Matter of Peterson*, 274 N.W.2d 922, 926 (Minn.1979).

This court has noted that a more rigorous showing of professional moral character is required for purposes of reinstatement than original admission to the bar. *In re Smith*, 220 Minn. at 200, 19 N.W.2d at 326; *Matter of Discipline of Thompson*, 365 N.W.2d 262, 264 (Minn.1985). However, "[d]isbarment should not be considered permanent in every case and one disbarred should not be considered irredeemable, for if disbarment were permanent in all cases, the rule would be a cruel hoax." *Swanson I*, 343 N.W.2d at 664.

■ There appears to be little dispute that petitioner has demonstrated a moral change by clear and convincing evidence. Indeed, the panel chairman stated: "This Panel believes that the applicant has demonstrated by clear and convincing evidence that he has undergone [a moral change]." Although the director acknowledges this finding of the panel, the director, nevertheless, argues that petitioner has not met his burden of showing clear and convincing evidence of his ability to abide by the rules of professional conduct.

We need not go into great detail concerning the facts presented to the panel. In short, petitioner produced evidence indicating:

1. That alcohol had been a serious problem in his life and had produced a moral laxity and a financial situation that resulted in the offense committed;

2. That he has undergone a marked change in his personality exhibited by his becoming more sensitive, sincere, friendly and open in his relationships with others;

3. That he has become a conscientious and diligent worker;

4. That he is a regular participant in Alcoholics Anonymous and Lawyers Concerned for Lawyers and has not used alcohol since 1982; and

5. That a psychiatrist determined that petitioner has made a complete psychological rehabilitation and is a totally different person than he was in 1978 and that, conditioned on continuing sobriety, there would not be the slightest tendency for Mr. Wegner to repeat any of his illegal behavior.

We conclude that the panel properly determined that petitioner has established a moral change by clear and convincing evidence. We must now determine whether petitioner should, nevertheless, be denied reinstatement to the practice of law in Minnesota even though he has demonstrated a change in moral character by clear and convincing evidence.

Although the existence of a change in moral character is the central focus in a reinstatement inquiry, other factors such as (1) consciousness of the wrongfulness of petitioner's conduct, (2) length of time since the misconduct, (3) presence of physical or mental illness susceptible to change, and (4) the seriousness of the original misconduct must be considered.

As to the first factor, petitioner has openly admitted the wrongfulness of his conduct and expressed remorse over the adverse effects it had on his friends and family. Furthermore, petitioner has acknowledged that he is an alcoholic and continues to attend AA. Unlike *Swanson II*, 405 N.W.2d 892, where the petitioner refused to recognize his misconduct, petitioner's understanding of his own prior conduct and his expression of remorse is a positive factor in determining whether reinstatement is appropriate.

As to the second factor, petitioner notes that the misconduct was in the mid–1970's. His release from prison was over 7½ years ago and he has been chemical-free for over 5 years. The director argues, however, that a sufficient time has not yet passed to ensure lasting rehabilitation and that reinstatement should be delayed at least 2 more years. *See Swanson I*, 343 N.W.2d 662 (sufficient time had not passed where petitioner was released from probation in 1981 and sought reinstatement in 1983). However, we fail to see what benefit would

be served by such a delay. A dozen years have passed since petitioner's misconduct. In the 7½ years since his release from prison, he has continuously and effectively sought to rehabilitate himself. Although the length of time since the prior misconduct must be considered, we cannot set a hard and fast rule applicable in every case; but, instead, must decide whether sufficient time has passed based on the facts of each individual case. Under the facts of this case, we are confident that sufficient time has passed to ensure lasting rehabilitation.

As to the third factor, involving a mental or physical illness susceptible to change, there is a substantial amount of evidence. The testimony summarized above indicates that alcoholism was a severe problem for petitioner. However, he has demonstrated a change in his character due to his successful treatment for his alcohol problem. Unlike *In re Ossanna*, 288 Minn. 541, 180 N.W.2d 260, where the court expressly noted the absence of any mitigating problem susceptible to change and thus denied reinstatement, the existence of petitioner's alcoholism and subsequent "correction" is a factor to be considered by this court. *See In re Constantine*, 249 Minn. 599, 81 N.W.2d 711 (1957), reinstated in 258 Minn. 582, 103 N.W.2d 196 (1960) (court specifically provided for reinstatement after disbarred attorney rehabilitated from alcoholism). Although we recognize that alcohol has never been deemed to be the sole cause of petitioner's prior misconduct, we think it is relevant that petitioner had an extensive history of alcoholism and has successfully completed treatment for this disease. He has remained chemical-free for over 5 years, which demonstrates a readiness to return to the practice of law.

As to the final factor, the director argues that petitioner's rehabilitation must be weighed against the serious nature of his misconduct. The director cites numerous cases from other jurisdictions for the proposition that reinstatement can be denied based solely on the seriousness of the misconduct. Although there is no Minnesota authority for such a broad proposition, this court has indicated that the present fitness to practice law of an attorney seeking reinstatement must be considered in light of the offenses for which he or she was disbarred. *Matter of Peterson*, 274 N.W.2d 922, 926 (Minn.1979). It is the director's position that, in light of the serious nature of petitioner's misconduct, reinstatement will "adversely reflect on the legal professional and the administration of justice."

We recognize the severity of petitioner's prior misconduct. Indeed, we are not quick to reinstate a lawyer who committed such a reprehensible crime, which led to disbarment in the first instance. However, petitioner has demonstrated by clear and convincing evidence that he has had a change in his professional moral character. Furthermore, analysis of each of the first three factors supports reinstatement. We, therefore, believe that, on the facts of this case, the severity of petitioner's prior misconduct should not prevent his reinstatement.

Under these circumstances, we find that the petitioner will be entitled to reinstatement after December 31, 1988, upon his meeting the following conditions:

1. That he remains sober and refrains from the use of alcohol;

2. That he remains free from committing any further acts that would be grounds for discipline;

3. That he complete those credits required by the State Board of Continuing Legal Education for lawyers in order to bring him up to date on those skills required of a practicing attorney;

4. That he take an approved refresher course on the Minnesota state bar examination of the type normally taken by law students seeking admission to the bar and file proof of attendance thereof; and

5. That he successfully pass that portion of the state bar examination dealing with legal ethics and lawyers' professional responsibility.

IT IS SO ORDERED.