**In re Petition for DISCIPLINARY ACTION AGAINST David V. ANDERLEY, an Attorney at Law of the State of Minnesota.**

No. C5–91–801.

Supreme Court of Minnesota.

March 13, 1992.

See also, 471 N.W.2d 104.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility, Kenneth L. Jorgensen, Sr. Asst. Director, St. Paul, for appellant.

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for respondent.

## OPINION

PER CURIAM.

On June 7, 1991, we temporarily suspended respondent David V. Anderley from the practice of law pending a final determination in these disciplinary proceedings. A referee's hearing was held in July 1991 on the two charges of misconduct, viz (1) fraud, theft and forgery, and (2) trust account violations. The matter is now before us on the referee's report and recommendation of disbarment.

Respondent was admitted to the Minnesota bar in 1979. He first worked as an associate in a general practitioner's office. From 1980 to 1985, he was general counsel to Lakeland Insurance Company. He then was in-house counsel for Western National Insurance Company for two months. In mid–1985, respondent began a solo practice consisting primarily of insurance defense matters for Lakeland and Western National.

In September 1990, respondent devised an elaborate scheme to defraud Lakeland Insurance Company. Using information and documents from Lakeland and Western National files in his possession, respondent fabricated a fire loss claim against one of Lakeland's insureds. Respondent based the claim on an actual lawsuit against Western National which he had handled in 1987.

Respondent made many alterations to documents, misrepresentations, and forgeries. He fabricated a summons and complaint and forged the signature of the plaintiffs' attorney on the documents. He falsely represented to Lakeland that the defendant's leaving Minnesota after the fire had tolled the statute of limitations, and thus the claim was not time-barred. He fabricated papers for a third-party claim. He altered answers to interrogatories, depositions, the fire investigation report, and other documents from the 1987 suit to conform to the fabricated claim.

Lakeland gave respondent authority to settle the case, and in October 1990 respondent told Lakeland that he had settled the claim for $48,500. Respondent forged the signatures of the plaintiffs and their attorney on the settlement check and deposited it into his trust account. He then altered the release papers by substituting the signature pages from the signed release in the earlier 1987 case. Respondent also billed Lakeland $974 for services and costs in handling the fictitious claim. Respondent used the settlement proceeds to pay his office expenses and to retire a $12,800 note he owed to a creditor of a restaurant in which he had an ownership interest.

Respondent's fraud was uncovered in April 1991 when, as part of an internal audit, Lakeland wrote the purported plaintiffs for verification of the settlement. Initially, respondent denied any wrongdoing and attempted to put the blame first on a fictitious associate, and then on another attorney who had formerly worked in the same office building and had been disbarred. Lakeland filed an ethics complaint against respondent and forwarded the matter to law enforcement authorities. On April 30, 1991, respondent made partial restitution of $40,000. Subsequently, respondent pled guilty to mail fraud in federal court and was sentenced to three years of probation (upon certain conditions, including full restitution and participation in substance abuse programming).

The second count of misconduct relates to trust account violations. The referee found that, since 1985, respondent had failed to maintain client subsidiary ledgers. Moreover, while respondent did maintain a separate cash receipts and disbursements journal, he has not reconciled the trust account for at least 2 years. During this period, respondent commingled personal funds and client funds by often keeping a "buffer" of about $2,000 of his own funds in the trust account. Since 1985, respondent has falsely certified on his annual attorney registration statement that he has kept the required trust account books and records.

Respondent puts forth as mitigating factors his alcohol abuse and financial difficulties. Respondent testified that he started drinking while in high school and since college has been drinking very heavily. He tried to cut back a few times, but failed. Over the past few years, respondent says he went to a bar near his office daily and usually stayed until closing; however, he did not drink at home or at his office, he did not drive after drinking, he never blacked out, and he never missed a legal deadline or had a client complain due to his alcohol abuse.

In late 1989, respondent and a business partner opened a bar and restaurant. A year later, respondent began getting letters from creditors and discovered that his partner had not been paying the business debts and was keeping two sets of books. Some creditors filed suit. Respondent had personally guaranteed some of the loans, and he testified that he thought he needed a lot of money to pay off the club's debts. Respondent was not behind in his own expenses (car payments, mortgage, office rent), and he consistently earned between $30,000 and in excess $50,000 annually from his law practice.

Respondent devised the fraudulent scheme during the time of the financial problems with the club. Respondent testified that he was overwhelmed by the club's problems, that he was drinking himself "into oblivion," and he was looking for an "easy way out." Respondent testified that after Lakeland filed its complaint with the Director's office, he consulted Dr. Carleton Anderson, a physician who practices addiction medicine. Respondent stopped drinking soon after his first meeting with Dr. Anderson and began regularly attending Alcoholics Anonymous meetings in addition to his meetings with Dr. Anderson.

Dr. Anderson diagnosed respondent with psychoactive substance use disorder, chronic alcoholism-active, and "probable" chronic anxiety disorder. Dr. Anderson testified that, in his opinion, respondent's alcoholism "triggered an addictive disease process characterized by dishonesty" and that the addictive disease process caused the fraud-

ulent behavior. The doctor based his diagnosis solely on what respondent told him, and he admitted that he did not know some seemingly basic facts about respondent's alcoholism and about the misconduct that prompted the complaint.

The referee concluded that respondent's conduct violated several of the Minnesota Rules of Professional Conduct (MRPC) regarding handling of client funds, honesty, and using client confidences to the lawyer's own advantage.[1] The referee also concluded that respondent failed to show by clear and convincing evidence that alcoholism should be considered a mitigating factor in determining the appropriate discipline. The referee recommended disbarment, noting that respondent's misconduct was due to his financial worries, not alcoholism.

■ This court determines appropriate sanctions on a case-by-case basis by examining the specific acts of misconduct together with any aggravating or mitigating circumstances. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). In determining the appropriate sanction to impose, the court considers the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and to the profession. *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988).

■ Respondent's conduct was undeniably egregious. Taken separately, acts of misappropriation, misrepresentation, and trust account mismanagement all warrant serious discipline. This court usually orders disbarment in cases of extensive misappropriation of client funds. *In re Larsen*, 459 N.W.2d 115, 120 (Minn.1990). In *In re Hunter*, 473 N.W.2d 866, 868–69 (Minn.1991), we disbarred an attorney who settled a client's suit for $23,500, concealed the settlement from his client, and misappropriated the settlement check. Respon-

dent's misrepresentations were more extensive and graver than those in *Hunter*, given that the entire claim and settlement was a sham. In fact, respondent pled guilty to mail fraud in federal court. A felony conviction warrants disbarment, unless significant mitigating factors exist. *In re Daffer*, 344 N.W.2d 382, 385 (Minn.1984).

What is particularly disturbing about this case is the elaborate lengths to which respondent went to carry out his scheme. Respondent fabricated or drastically altered dozens of documents, including third-party suit papers, discovery depositions, and answers to interrogatories. To carry out this deception, he painstakingly changed names and dates and made deletions from the old case file that served as his script for the fictitious lawsuit. For some 4 to 5 weeks, respondent engaged in the charade of "negotiating" a settlement of the lawsuit, a process that required a web of lies. Finally, when he received the settlement papers and draft from Lakeland, respondent once again forged the needed signatures, deposited the $48,500 for his own use and, as the final blow, submitted a bill to his client for his services.

We have no difficulty concluding that this misconduct calls for severe discipline, and respondent's trust fund account violations and his felony conviction in federal court for mail fraud only compound the seriousness of respondent's behavior. This misconduct warrants disbarment, unless significant mitigating factors exist.

■ Respondent does not dispute the wrongfulness of his conduct but claims mitigating circumstances consisting of alcohol abuse and financial problems due to business reversals. It appears that respondent suffers in some degree from alcoholism, but respondent must do more than estab-

---

**1.** The referee concluded: (1) respondent's fraud, forgery, and misappropriation of funds violated Rules 1.6(a)(3), 1.8(b), 1.15(a), 4.1 and 8.4(b), (c) and (d), MRPC; (2) misrepresentations to the plaintiffs' attorney, Lakeland and Lakeland's counsel violated Rules 4.1 and 8.4(c) and (d), MRPC; (3) respondent's commingling of personal funds with client funds and failure to maintain the required trust account books and

records violated Rules 1.15(a) and (g), and 8.4(d), MRPC, and Amended Opinion No. 9 of the Lawyers Professional Responsibility Board; and (4) respondent's certification on his annual attorney registration statement that he maintained the required trust account books and records violated Rules 1.15(h) and 8.4(c) and (d), MRPC.

lish that he is an alcoholic. For alcoholism to be a mitigating factor, the attorney must prove by clear and convincing evidence that (1) he is affected by alcoholism, (2) the alcoholism caused the misconduct, (3) he is recovering from alcoholism, (4) the recovery has arrested the misconduct, and (5) the misconduct is not apt to recur. *In re Johnson*, 322 N.W.2d 616, 618 (Minn.1982). The key factor here is causation, as alcoholism itself is not a defense to misconduct. *Id.*

The referee concluded that respondent did not prove that alcoholism caused his misconduct. The referee found Dr. Anderson's opinion on causation suspect and lacking foundation for several reasons: Dr. Anderson relied only on respondent's statements, and there were some inconsistencies between the doctor's and respondent's testimony regarding respondent's drinking habits. The referee also found Dr. Anderson's opinion that respondent's alcoholism triggered the misconduct lacking in credibility—for example, Dr. Anderson failed to consider other more obvious causes of the misconduct (*i.e.*, his financial problems), and the "complex and calculated" nature of the fraudulent scheme made it unlikely to have been caused by alcoholism.

Respondent vigorously disputes the referee's findings and conclusions that the alcoholism did not cause the fraud. While it certainly appears Dr. Anderson's treatment of respondent's condition has been skillful and beneficial, it does not follow that the referee was required to accept the doctor's opinion on causation just because his was the only expert opinion given. The opinion was given on the basis of an abbreviated hypothetical question, and on cross-examination it became evident that the doctor was unfamiliar with the details of the respondent's fraudulent scheme and with the remarkable degree of calculation that characterized the scheme. Dr. Anderson had no persuasive explanation as to why the fraudulent scheme should be attributed to alcoholism rather than to the search for an "easy way out" of a financial bind.

 We find no reason to set aside the findings. The referee observes the expert witness' demeanor, and thus this court will adopt the referee's assessment of the expert's testimony unless the record persuades us that the referee was incorrect. *In re Andrew*, 465 N.W.2d 576, 578 (Minn. 1991). The referee's findings and conclusions are supported by the record and fairly reflect the testimony. Thus we affirm the referee's conclusion that respondent's alcoholism was not a mitigating factor and adopt his recommendation of disbarment.

Accordingly, we order David V. Anderley be, and hereby is, disbarred.