**In re the Petition for Reinstatement to the Practice of Law OF David V. AN-DERLEY, Attorney Registration No. 1533.**

No. C5–91–801.

Supreme Court of Minnesota.

May 26, 2005.

Kenneth L. Jorgensen, Director, Betty M. Shaw, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant's.

Michael J. Hollenhorst, Spring Park, MN, for Respondent's.

## OPINION

PER CURIAM.

In this case we consider the recommendation of a three-member panel of the Lawyers Professional Responsibility Board that disbarred attorney, petitioner David Anderley, be conditionally reinstated to the practice of law in Minnesota. The Director of the Lawyers Professional Responsibility Board joins in the panel's recommendation. We have independently reviewed the record and we conclude that Anderley is entitled to be reinstated to the practice of law, subject to certain conditions.

Anderley was admitted to the practice of law in Minnesota in 1979. In March 1992, we disbarred Anderley, agreeing with the referee's conclusion that Anderley had committed fraud and forgery, had misappropriated funds, had commingled personal and client funds in his trust account, and had failed to maintain trust account records over a period of time while falsely certifying that he had done so. *In re Disciplinary Action Against Anderley*, 481 N.W.2d 366, 367–70 (Minn.1992). Anderley, who was performing insurance defense work, devised a fraudulent claim against an insurance company, forged and altered documents to validate, support and settle a claim, obtained approval from the company for settlement in the amount of $48,500, forged settlement documents, and misappropriated settlement moneys from his trust account for his personal use. *Id.* We agreed with the referee's conclusion that Anderley's misconduct was not caused by alcoholism even though a physician had diagnosed Anderley with psychoactive substance use disorder, chronic alcoholism and a potential chronic anxiety disorder, which,

according to the physician, triggered the misconduct. *Id.*

As a result of his misconduct, Anderley was charged in federal district court with the crime of mail fraud to which he pleaded guilty. He was sentenced to six months of confinement with work release, three years of probation, and was ordered to pay restitution to the insurance company he defrauded.[1]

In November 2002, Anderley petitioned for reinstatement to the practice of law, as permitted by Rule 18, Rules on Lawyers Professional Responsibility (RLPR).[2] As directed by Rule 18, the Director investigated and reported conclusions to a three-member panel of the Lawyers Professional Responsibility Board. Following an evidentiary hearing before the panel, it issued its findings of fact and conclusions and recommended that Anderley be reinstated to the practice of law, subject to certain conditions. At the panel hearing, the Director opposed reinstatement, but following issuance of the panel's findings, conclusions and recommendations, the Director joined with the panel in recommending that Anderley be conditionally reinstated.

■ Anderley has been disbarred for 13 years. The panel's findings, conclu-

sions and recommendations, together with the record, clearly demonstrate that Anderley has made significant lifestyle changes since his disbarment. He began medical treatment for alcoholism, anxiety disorder, and depression in 1991 and until 1994 he received medication for anxiety and depression. Since 1991 he has been attending Alcoholics Anonymous (AA), which has become a focal point and primary support mechanism in his life. Much of his free time is given to AA and its members. He attends several AA meetings weekly, is a "trusted servant," and often runs meetings, speaks to groups, and sponsors other members. He has made presentations to various organizations, including Minneapolis Intergroup Association, Hazelden, Maple Lake Treatment Center, Medicine Lake Detox Center, Anoka County Corrections Treatment Facility, Avalon Program, Indian Recovery Program, AA Correctional Facilities Temporary Sponsorship Program, and the Learning Center. The record supports the panel's finding that through his speaking engagements, Anderley has "espoused the need for treatment of alcoholism and other mental health issues, the need for personal honesty, a realistic self-perception, the establishment of protective personal boundaries, a willingness to seek ad-

1. In sentencing Anderley, the federal court imposed a two-level enhancement because the fraud reflected a carefully-planned scheme carried out over a period of time, but the court also departed downward three levels from the sentencing guidelines, noting Anderley's cooperation, acceptance of responsibility, treatment for alcoholism and the payment of substantial restitution. Anderley successfully completed and has been discharged from probation.

2. Rule 18 requires the disbarred attorney to petition this court, after which the Director conducts an investigation and reports conclusions to a panel. Rule 18(a)-(b) RLPR. The panel may conduct a hearing and shall file its recommendations with this court, after which

this court generally may hold a hearing or appoint a referee to conduct a hearing. *Id.* at (c)-(d). A long-disbarred attorney like Anderley must successfully retake the Minnesota Bar Examination, successfully take the Professional Responsibility Examination, complete continuing legal education (CLE) requirements, and satisfy all claims made against him by the Client Security Board. *Id.* at (e)(1), (2), (4). In July 2001, Anderley successfully passed the Minnesota Bar Examination and in March 2002, he successfully passed the Professional Responsibility Examination. Anderley states that he has not attended CLE programs because he is currently working 60 hours each week and cannot afford to pay for CLE programs.

vice and counsel when necessary and to establish and maintain spirituality." Anderley has accepted full responsibility for the misconduct that resulted in his disbarment.

Between 1992 and 2002, Anderley worked as a paralegal for five different lawyers. One of the lawyers for whom he worked from 1995 to 2001 testified that his work was excellent and that he was very reliable. As of August 1, 1999, lawyers hiring Anderley were required under Minnesota Rules of Professional Conduct to notify the Office of Lawyers Professional Responsibility of any employment of a disbarred attorney in any capacity. *See* Minn. R. Prof. Conduct 5.7.[3] After this rule change, it became more difficult for Anderley to find work as a paralegal. From January to March 2003, Anderley worked in sales and account maintenance for a lawn chemical company; from March to August 2003, he worked reading and scoring tests; and from August 2003 to the present he has worked as a professional driver transporting vulnerable adults. His current employer considers him a trusted and valuable employee; he is well liked by clients, healthcare facilitators and caregivers.

To support his petition for reinstatement, Anderley met with Dr. Reitman, a psychiatrist, who conducted a forensic evaluation with respect to Anderley's alcoholism and current psychological health. Dr. Reitman conducted lengthy and extensive interviews with Anderley, reviewed his past medical records and administered an MMPI–II. According to Dr. Reitman, Anderley is clearly a chemically-dependent person, but in full remission, and he also has a generalized anxiety disorder, in remission.[4] According to Dr. Reitman, Anderley has undergone significant characterological change due to his sustained sobriety and has developed good coping mechanisms, a realistic self-concept, and good appreciation of his strengths and weaknesses. Anderley does not show any symptoms of major psychopathology or psychopathy. Compared with other professionals he has diagnosed, Dr. Reitman opined that Anderley was a very good candidate for reinstatement, but would benefit from continued psychological counseling to assist him in maintaining his characterological change.

At the panel hearing, the Director called Dr. Wojcik, a psychologist, to testify. Dr.

---

**3.** Prior to or at the time of employing a person the lawyer knows or reasonably should know is a disbarred, suspended, or disability inactive lawyer, the lawyer shall serve upon the Office of Lawyers Professional Responsibility written notice of the employment, including a full description of such person's current license status. The notice shall state that the suspended, disbarred, or disability inactive lawyer shall not be employed to perform any of the activities prohibited by [this rule].

Rule 5.7, Minn. R. Prof. Conduct.

**4.** Significant to Dr. Reitman's opinion was the comparison of personality testing, the "MMPI–II," taken in 1991 and 1993, to the same test administered in 2002. MMPI–II is the Minnesota Multiphasic Personality Inventory test and is the most common clinical

personality test used to assess psychological disorders. *See* Terry F. Pettijohn, Psychology: A ConnectText, McGraw Hill/Dushkin (4th ed., 2005) at *http://www.dushkin.com/connectext/psy/ch11/mmpi.mhtml*. The earlier tests were considered invalid because the indicators showed that Anderley was not answering truthfully and may have been exaggerating or faking symptoms. The 2002 test results were valid according to reliability factors incorporated in the test. Scales 4 (psychopathic deviance) and 6 (paranoia) results were relatively high, putting Anderley at the fifth percentile for Scale 4 and the second percentile for Scale 6, but Reitman considered it "extremely significant" that Anderley was able to produce a valid test result, indicating that he has found ways to channel his impulsivity and suspiciousness traits to appropriate outlets.

Wojcik had not interviewed Anderley, but had examined Anderley's personality test results. Dr. Wojcik testified that he would not hire Anderley as his attorney even if Anderley remained sober. According to Dr. Wojcik, Anderley's profile made him likely to resent authority figures, likely to attempt to rationalize his actions, likely to make demands on others, and likely to resent being asked to perform tasks. Dr. Reitman criticized Dr. Wojcik's opinion, which was based on statistics without a personal interview of Anderley. By affidavit, a third expert, Dr. Mark Willenbring, also criticized Dr. Wojcik's reliance on statistical analysis of a group, without a personal interview, to predict Anderley's individual behavior.

The panel considered the conflicting expert testimony and concluded that Anderley's alcoholism was in remission, noting that he had been abstinent for more than 13 years. His reactive depression and anxiety were also in remission. He showed no symptoms of major psychopathology or psychopathy. The panel also concluded that Anderley had established, "by clear and convincing evidence, that he has undergone a moral and characterological change as to now render him a fit person to enjoy the public confidence and trust which he once forfeited." The panel acknowledged that psychological testing demonstrated that Anderley appeared to possess certain "undesirable" character traits, but concluded that Anderley was aware of those traits and the need to control them and had developed, through his involvement with AA and the help of others, "a coping mechanism to effectively and self-critically manage such traits." [5]

Numerous affidavits from Anderley's friends and family characterized Anderley as a sober, honest, caring, selfless and compassionate person. Witnesses testified that Anderley possessed the character and fitness to practice law. Anderley's work as a paralegal was top quality. The record establishes that if reinstated to the practice of law, Anderley would have opportunities for employment as an attorney.

The panel concluded that Anderley has complied with Rule 26, RLPR, requirements. He paid the costs and disbursements required by Rule 24, RLPR. He has also complied with Rule 18, RLPR, examination requirements by passing the Multistate Professional Responsibility Examination and the Minnesota State Bar Examination, but he has not completed the continuing legal education (CLE) requirements at this time. The panel also concluded that Anderley had proved by clear and convincing evidence that he possesses current legal skills and knowledge.

In Minnesota, a disbarred attorney is permitted to apply for reinstatement to the practice of law by petition to this court. Rule 18, RLPR. The Director conducts an investigation and reports conclusions to a three-member panel of the Lawyers Professional Responsibility Board. *Id.* at (a)-(b). The panel may conduct a hearing, as was done here, and the panel files its recommendations with this court. *Id.* at (c)-(d). A disbarred attorney such as Anderley must successfully complete the Minnesota Bar Examination and the Multistate Professional Responsibility Examination, complete CLE requirements, and satisfy all claims made against him by the Client Security Board. *Id.* at (e)(1), (2), (4).

The attorney seeking reinstatement must prove by clear and convincing

---

**5.** Anderley's ability to produce a valid personality exam score in 2002, in contrast to two invalid previous scores, was noted by his psychiatrist as a significant indicator of his openness and honesty in self-examination.

evidence that he has undergone a moral change such that clients can have complete confidence in his competence and morality. *In re Kadrie*, 602 N.W.2d 868, 870 (Minn. 1999) (citing *In re Wegner*, 417 N.W.2d 97, 98 (Minn.1987); *In re Herman*, 293 Minn. 472, 475, 197 N.W.2d 241, 244 (1972)). The petitioning attorney is required to provide stronger proof of good character and trustworthiness than is required in the original application for admission to practice. *In re Porter*, 472 N.W.2d 654, 655–56 (Minn. 1991). In addition to proof of moral change, we consider five additional factors: (1) the attorney's recognition that his conduct was wrong; (2) the length of time since the misconduct and disbarment; (3) the seriousness of the original misconduct;[6] (4) the attorney's physical or mental illness or pressures that are susceptible to correction; and (5) the attorney's intellectual competency to practice law. *Kadrie*, 602 N.W.2d at 870 (citations omitted).

We independently review the entire record before determining if an attorney should be reinstated to the practice of law. *Id.* The panel's recommendations are considered but not binding on us. *See, e.g., id.* at 869–70 (reinstating suspended attorney over panel recommendation); *In re Williams*, 433 N.W.2d 104 (Minn.1988) (reinstating suspended attorney over panel recommendation); *Wegner*, 417 N.W.2d at 97 (reinstating disbarred attorney over panel recommendation).

While reinstatement after disbarment is the rare exception and not the rule, we conclude that Anderley is the exception and the rare individual who has met the heavy burden of demonstrating his rehabilitation and who qualifies for reinstatement.[7] He has acknowledged and taken responsibility for his misconduct and worked diligently and successfully to make amends for his wrongdoing and to reform himself. Over 13 years have passed since Anderley was disbarred. He has truly undergone a characterological change since being disbarred in 1992. He has undergone treatment for his alcoholism and regularly attends Alcoholics Anonymous, providing leadership and support to those like afflicted. Two psychiatrists attest to the fact that he has undergone moral and characterologic change, and has developed coping skills to deal effectively with his psychological propensities toward anxiety and paranoia. Attorneys for whom he worked as a paralegal since his disbarment attest to his honesty, diligence, and proficiency. His current employer regards him as honest, compassionate, and trustworthy in his work assisting vulnerable adults. Family and friends who know him well recognize, appreciate and describe in very human terms his honesty

---

**6.** The seriousness of the attorney's misconduct only rarely precludes further consideration of the attorney's petition for reinstatement. *See Application of Van Wyck*, 225 Minn. 90, 29 N.W.2d 654, 654–55 (1947) (refusing to consider reinstating disbarred attorney convicted for offense of "heinous moral turpitude"). We have reinstated attorneys to the practice of law who have been disbarred for misappropriating client funds, stealing, or dishonesty in general. *See, e.g., In re Constantine*, 258 Minn. 582, 103 N.W.2d 196 (1960) (reinstatement following disbarment for conviction for grand larceny); *In re Priebe*, 213 Minn. 75, 5 N.W.2d 396 (1942) (reinstate-

ment following disbarment for perjury in *In re Priebe*, 207 Minn. 97, 290 N.W. 552 (1940)).

**7.** By letter of October 12, 2004, the President of the Minnesota Bar Association wrote to this court advising that the record in this case had not been reviewed and that no opinion would be expressed on the appropriateness of reinstatement in this case. But the president also stated that while "disbarment is and should remain presumptively permanent," that each case should be decided on its own facts, and that "a disbarred lawyer should not be irrebuttably presumed to be beyond the possibility of rehabilitation."

and compassion. Notwithstanding the seriousness of the misconduct which led to his disbarment, the other factors we consider weigh greatly in his favor. The Director also joins the panel in recommending Anderley's reinstatement.

We conclude, as did the panel, that Anderley has met the heavy burden of demonstrating his rehabilitation and of proving that he is fit to practice law, subject to certain restrictions. We therefore reinstate Anderley to the practice of law, subject to his completion of CLE requirements and subject to the following conditions recommended by the panel and by the Director: (1) Anderley shall not engage in solo practice of law but shall work in a setting where he is in daily contact with, and under the direct supervision of, other Minnesota licensed attorneys until further order of the court; (2) he shall continue to attend and participate in Alcoholics Anonymous on at least a weekly meeting basis, and that such weekly attendance shall be certified at least quarterly on a calendar year basis by a representative of Alcoholics Anonymous and by Anderley; (3) he shall remain sober and refrain from the use of alcohol; (4) he shall submit to random alcohol and drug testing through a professional laboratory acceptable to the Office of Lawyers Professional Responsibility; (5) he shall obtain periodic psychological counseling with a psychiatrist or psychologist familiar with addictive disorders, acceptable to the Office of Lawyers Professional Responsibility, and with such frequency and for such time as such psychologist or psychiatrist may recommend to the Office of Lawyers Professional Responsibility; and (6) he shall be placed on indefinite probation, subject to the following conditions: (a) before accepting any clients, a supervisor approved by the Director's office shall be appointed to monitor Anderley's practice; (b) Anderley shall abide by the Minnesota Rules of Professional Conduct and cooperate with the Director's office and the supervisor approved by the Director's office in monitoring the conditions of his reinstatement and his practice; (c) he shall provide his supervisor at the beginning of each month an inventory of client files and meet with his supervisor at least quarterly on a calendar year basis regarding these files; and (d) he shall submit his trust account books and records to the Director's office for review at such intervals as the Director's office shall request.

So ordered.