**In re Petition for Reinstatement to the Practice of Law of Daniel Martin LIEBER, a Minnesota Attorney, Registration No. 207731.**

No. A10–1705.

Supreme Court of Minnesota.

July 31, 2013.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, PLLC, Minneapolis, MN, for petitioner.

Martin A. Cole, Director, Patrick R. Burns, First Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for respondent.

## OPINION

PER CURIAM.

Petitioner Daniel Martin Lieber seeks reinstatement to the practice of law in the State of Minnesota pursuant to Rule 18, Rules on Lawyers Professional Responsibility (RLPR). Following a hearing, a panel of the Lawyers Professional Responsibility Board recommended that we reinstate Lieber, subject to an indefinite period of supervised probation and several conditions. We ordered a de novo hearing before a referee after expressing concerns with the panel's findings. Following that hearing, the referee issued findings of fact, conclusions of law, and a recommendation that we reinstate Lieber subject to various conditions. The Director of the Office of Lawyers Professional Responsibility initially deferred to the referee's recommendation, but changed his position after we ordered briefing and currently opposes Lieber's reinstatement. After independently reviewing the record, we conclude that Lieber has satisfied the requirements for reinstatement to the practice of law in Minnesota, subject to a period of supervised probation with conditions that we describe more fully below.

Lieber was admitted to the practice of law in Minnesota in May 1990. On May 2, 2005, a referee recommended that we dis-

bar Lieber for professional misconduct. The next day, Lieber executed the sale of his law practice to his employee, attorney Reino Paaso. One month later we suspended Lieber "from the practice of law pending final determination of the disciplinary proceeding[s]" and ordered Lieber to comply with Rule 26, RLPR, which requires a suspended attorney to give notice of that suspension to clients, opposing counsel, and any tribunal involved in pending proceedings.

Lieber stipulated to the referee's findings of fact, conclusions of law, and recommendation for disbarment, and we disbarred Lieber on June 30, 2005. *In re Lieber*, 699 N.W.2d 722, 722 (Minn.2005). More specifically, we disbarred Lieber for making "improper financial advances to clients," charging those clients interest at a monthly rate of 15 percent, failing "to disclose his conflict of interest in the transactions," making false statements under oath about his involvement in one of the transactions, ratifying "the false sworn testimony of one of his employees about one of the transactions," temporarily misappropriating the funds of some clients in order to pay other clients, commingling personal and client funds in his trust account, and failing to maintain proper trust account books and records. *Id.*

In the years since we disbarred Lieber, he has continued to accumulate continuing legal education credits. In 2009 Lieber retook and passed the Minnesota Bar Examination, and in 2010 he retook and passed the Multistate Professional Responsibility Examination (MPRE). In September 2010 Lieber petitioned our court for reinstatement to the practice of law in Minnesota pursuant to Rule 18, RLPR. Following a hearing, a panel of the Lawyers Professional Responsibility Board made findings and recommended that we reinstate Lieber to the practice of law

subject to an indefinite period of supervised probation with several conditions. The Director deferred to the panel's recommendation.

Because the panel's findings and recommendation raised several concerns with our court, we referred the matter to a referee to conduct a de novo hearing, and instructed the referee to give no deference to the panel's findings. *In re Lieber*, No. A10–1705, Order at 4 (Minn. filed Sept. 20, 2011). We noted that the panel had made few findings as to Lieber's "observed record of appropriate conduct since his disbarment or as to the evidence supporting moral change." *Id.* at 3 (citation omitted) (internal quotation marks omitted). We expressed concern that the "evidentiary support for some of the panel's findings" relating to the sale of Lieber's law practice was "subject to question." *Id.* We also noted that, although the panel made extensive findings concerning Lieber's alcoholism and his recovery, "[t]he referee who heard the disciplinary petition [leading to] Lieber's 2005 disbarment found that Lieber had failed to prove . . . that alcoholism had caused his misconduct." *Id.* Thus, we directed the referee to make the following specific findings: (1) "whether Lieber has undergone the requisite moral change [including] . . . all evidence supporting and contrary to the existence of moral change"; (2) "Lieber's 'observed record of appropriate conduct' since his disbarment, as well as his state of mind and personal values, and how those things demonstrate that, if reinstated, clients could submit their affairs to Lieber with complete confidence," and (3) "the circumstances of the sale of Lieber's law practice, the method by which the parties determined the price and other terms of the sale, and the parties' compliance since June 2005 with the stock purchase and associated agreements." *Id.* at 5.

In June 2012, following a 2–day hearing, the referee submitted his findings of fact, conclusions of law, and recommendation. After several pages of factual findings—which we address in more detail below—the referee concluded that Lieber: (1) "recognizes the wrongfulness of his misconduct and has demonstrated remorse for his misconduct," (2) "has the necessary competence to return to the practice of law," and (3) proved "by clear and convincing evidence that he has undergone the requisite moral change to render him fit to be reinstated to the practice of law."[1] The referee recommended that we reinstate Lieber to the practice of law subject to certain conditions. Although the Director initially deferred to the referee's recommendation, the Director changed his position after we ordered briefing and currently opposes Lieber's reinstatement.

 The primary question we must decide is whether Lieber has established that he is fit to be reinstated to the practice of law. In Minnesota, a disbarred attorney may petition our court for reinstatement to the practice of law. Rule 18(a), RLPR. "While reinstatement after disbarment is the rare exception to the rule, a disbarred attorney who meets the heavy burden of demonstrating ... rehabilitation will be reinstated." *In re Ramirez*, 719 N.W.2d 920, 924 & n. 4 (Minn. 2006) (observing that, from 1985 through 2006, we had disbarred 57 attorneys but had only reinstated 4 disbarred attorneys).

We have explained that if disbarment were permanent in every case, Rule 18, RLPR, "would be a cruel hoax." *Id.* at 924 (citation omitted) (internal quotation marks omitted).

 "The attorney seeking reinstatement must prove by clear and convincing evidence that he [or she] has undergone a moral change such that clients can have complete confidence in his competence and morality." *In re Anderley*, 696 N.W.2d 380, 384–85 (Minn.2005). In addition to proof of moral change, we consider: "(1) the attorney's recognition that [his or] her conduct was wrong; (2) the length of time since the misconduct and disbarment; (3) the seriousness of the original misconduct; (4) the attorney's physical or mental illness or pressures that are susceptible to correction; and (5) the attorney's intellectual competency to practice law."[2] *In re Ramirez*, 719 N.W.2d at 924–25. We independently review the record to determine whether an attorney should be reinstated to the practice of law and, while we consider the recommendation of a referee, that recommendation is not binding. *See In re Anderley*, 696 N.W.2d at 385. We nonetheless will defer to a referee's credibility assessments and uphold factual findings "if they have evidentiary support in the record and are not clearly erroneous." *See In re Holker*, 765 N.W.2d 633, 637 (Minn. 2009) (citation omitted) (internal quotation marks omitted).

---

1. The referee also concluded that Lieber satisfied the requirements of Rule 24, RLPR (permitting the prevailing party in disciplinary proceedings to recover costs and disbursements); Rule 26, RLPR (requiring a suspended or disbarred attorney to give notice of their suspension or disbarment to clients, opposing counsel, and any tribunal involved in pending proceedings); and Rule 18, RLPR (requiring a petitioner for reinstatement to achieve a passing score on the bar exam and the MPRE,

and to satisfy the Continuing Legal Education (CLE) requirements of a member of the bar).

2. It is undisputed that Lieber has complied with the other requirements in Rule 18, RLPR, to be reinstated: successful completion of the bar exam and the MPRE, satisfaction of CLE requirements, and payment of any subrogation claim against him by the Client Security Board. *See* Rule 18(e)(1), (2), and (4), RLPR.

## A. *Proof of Moral Change*

■ The only factor that the Director disputes is whether Lieber has established the requisite moral change. Evidence of moral change must come from an observed record of appropriate conduct and the petitioner's state of mind and values. *In re Kadrie*, 602 N.W.2d 868, 870 (Minn.1999). In our September 2011 order we instructed the referee to develop the record and make findings on those particular factors. We address those factors below. We also evaluate the circumstances surrounding the sale of Lieber's law practice and address the Director's assertion that Lieber has not complied with the spirit of Rule 26, RLPR.

### 1. *Lieber's Observed Record of Appropriate Conduct*

In 2011 the panel made a number of findings with respect to the substantial progress Lieber has made in addressing his alcoholism and the negative character traits underlying his prior misconduct. More specifically, the panel found that Lieber discussed his alcoholism with the panel, acknowledged that greed and control drove his misconduct, described his participation in Alcoholics Anonymous, and presented several witnesses who testified that Lieber has changed his negative character traits. But we noted in our September 2011 order that those findings were inconclusive of Lieber's moral change in light of several unanswered questions about Lieber's conduct. For that reason, we asked the referee to develop the record more fully as to whether Lieber has undergone the requisite moral change. Unfortunately, seven paragraphs of the referee's findings dealing with Lieber's moral change duplicate the panel's findings almost verbatim—primarily with respect to Lieber's sobriety and improved character traits. We acknowledge that the Director does not challenge those aspects of the referee's findings, and we agree that the record supports those findings. However, consistent with our September 2011 order, we next address what additional evidence demonstrates Lieber's record of appropriate conduct and moral change since his disbarment.

The referee also found that Lieber demonstrated appropriate conduct through letters he has sent to the clients he represents in arbitration. Those letters advise clients that the rules of the American Arbitration Association permit a disbarred attorney to represent them in no-fault arbitration proceedings and seek written consent from those clients to allow Lieber to represent them in such proceedings. Lieber testified that no law requires him to seek such consent, but he does so to "make sure that the client [is] comfortable with a disbarred attorney representing them" and "to get something in writing confirming that the client received full disclosure." Lieber sends similar letters to the American Arbitration Association in connection with every client he represents.

In addition, after an arbitration proceeding has concluded, Lieber asks the arbitrator to complete an affidavit confirming that Lieber acted competently, honestly, and ethically in the arbitration and was both thorough and prepared. Samples of those affidavits appear in the record. Lieber testified that he has received more than 60 such affidavits, constituting roughly a 98 percent response rate. Both Lieber and his employer, Paaso, explained that Lieber is not required to obtain those affidavits, but that he does so to keep a record that he is "doing a good job, acting in a good manner," and so that Paaso can track Lieber's behavior to ensure that Lieber is acting competently, honestly, and ethically.

The referee also identified three acts or omissions indicating that Lieber has not

undergone the requisite moral change. First, the referee found that Lieber signed and mailed a demand letter on behalf of a client in July 2005—several weeks after his disbarment. Lieber concedes that the July 2005 letter constituted a negotiation on behalf of a client and exceeded the scope of his permissible activities. He testified that the July 2005 letter "was a big goof and [he] should have known better," but that because it was so soon after he had been disbarred, he and Paaso "were kind of sorting out things [Lieber] could and could not do," and that Lieber's intent with that letter was only to serve as a conduit between the client, Paaso, and the party to whom the demand letter was sent. Lieber also described at length his daily work activities and his efforts to perform only tasks that he is permitted to perform as a non-attorney, including his refusal to provide legal advice to his mother despite her persistence in seeking his advice.

Second, the referee found that Lieber failed to report $192,000 in income from the sale of his law practice on his state and federal income tax returns for the 2009 tax year. Lieber testified that he reported that income to his accountant and relied on the accountant to properly file his tax returns. Lieber's accountant, who testified before the panel but not before the referee, explained that the failure to report that income was an error on the part of the accountant's office. When the Director identified that error during the underlying reinstatement proceedings, Lieber's accountant filed amended tax returns and all taxes and penalties associated with that error have been paid.

Third, the referee found that Lieber omitted three traffic violations from his 2009 application to retake the bar exam. Lieber testified that he had forgotten about those violations at the time he filed his application, and that those violations were not listed on the driving abstract he had obtained. After filing his bar exam application, Lieber received a speeding ticket and immediately notified the Minnesota State Board of Law Examiners of that violation, demonstrating Lieber's good faith on this point. The record also reflects that two unpaid debts identified by the Minnesota State Board of Law Examiners were erroneously listed on Lieber's credit report.

Finally, although not addressed by the referee, Lieber started a business in 2006 called No–Fault Funding Corporation. Lieber testified that No–Fault Funding Corporation was his "attempt to make amends" for his past misconduct—namely, his scheme of advancing or loaning money to five clients at a 15 percent interest rate—by providing similar funding to people at "reasonable bank rates." Lieber further explained that he saw "a need for this litigation funding because ... people who have been involved in these types of injuries or accidents can't work because of their injuries or work restrictions [and] get behind on their bills." Because such funding involves high risk and low returns, Lieber testified that he was unable to secure funding and he dissolved the company without making any loans. Although no assertion has been made here that this business venture violated any specific rule, this conduct resembles the type of conduct that led to Lieber's disbarment. We note, however, that No–Fault Funding Corporation was never capitalized and never provided loans.

### 2. *Lieber's State of Mind and Values*

In addition to seeking a more developed record of Lieber's appropriate conduct, we instructed the referee to make specific findings as to Lieber's "state of mind and personal values."

The record reflects that Lieber has made efforts to maintain transparency and honesty in his conduct, including: the client letters and arbitrator affidavits discussed above; his consultation with attorneys with respect to the sale of his law practice and his obligations under the ethics rules, discussed in more detail below; the records he has kept of his daily activities as an employee of Metro Law Offices; and his efforts to become more honest with his family and friends in his personal life, particularly with respect to his sobriety. Lieber's psychologist testified about improvements in Lieber's empathy and ability to express emotions, and opined that Lieber "is a trustworthy professional" who presents a low risk of engaging in the type of negative behaviors that led to his prior misconduct. In addition, Lieber testified that he voluntarily contacted all of the former clients to whom he had made improper loans and repaid them. Lieber also continues to regularly attend an alcohol "relapse prevention group" and therapy sessions with his treating psychologist.

### 3. *Evidence Relating to the Sale of Lieber's Law Practice*

In our September 2011 order, we also emphasized our desire for more details regarding the sale of Lieber's law practice. Specifically, we instructed the referee to make findings as to "the circumstances of the sale, ... the method by which the parties determined the price and other terms of the sale, and the parties' compliance since June 2005 with the stock purchase and associated agreements."

The referee found, and the record reflects, that Lieber sold his practice to Paaso on May 3, 2005, before Lieber's suspension and subsequent disbarment. Although the parties amended the stock purchase agreement several times in late 2005 and erroneously neglected to change certain language in the amended agreements into past tense, the record supports the referee's finding that the parties effectuated the sale on May 3, 2005. Both Lieber and Paaso testified that the purpose of the sale was to continue the law practice in order to provide employment security for the firm's five staff members and to prevent clients from having to seek new representation. Attorney William Wernz testified that, although he did not advise Lieber as to the details of the sale and did not remember exactly what he advised Lieber to do, his practice would have been to advise Lieber that—in the interests of Lieber, his clients, and overall efficiency—selling the entire law practice would be preferable to transferring clients file-by-file. Wernz also advised Lieber that he needed to complete the sale quickly to ensure that Minn. R. Prof. Conduct 1.17, which governs the sale of a law practice by a lawyer, was an available process. Specifically, Wernz was concerned that the process available under Rule 1.17 might be unavailable to a suspended or disbarred attorney.

Lieber hired a business attorney, Lewis Seltz, to advise him on the appropriate purchase price. Lieber first incorporated the law practice as Metro Law Offices, Limited, and then sold it to Paaso by execution of a stock purchase agreement and a promissory note. Consistent with Paaso's testimony, Lieber explained that Seltz recommended the $1,875,000 purchase price, which reflects 2.5 times the average annual gross income of the law practice based on the 3 years preceding the sale. Lieber testified that he and Seltz met with Paaso approximately three times but did not negotiate the price much, explaining that the sale "was put together very quickly, and [Lieber] was relying on Mr. Seltz's expertise. He is a business attorney, and he said this is a common method of how you set a price."

Seltz did not testify before the panel or the referee, but the record contains a letter from Seltz to Lieber and Paaso summarizing some of the details of the sale. The letter states that Seltz represents Lieber in the transaction, but not Paaso. The letter also states that Paaso would be required to pay the $1,875,000 purchase price in monthly installments of $16,000 beginning June 1, 2005. The referee found, and the record reflects, that in the 7 years since the sale agreement was executed, Paaso had fallen approximately 8 months behind on those payments as of the date of the 2012 hearing. In addition, the stock purchase agreement provided for about a $1,000,000 balloon payment, originally due on May 1, 2012. Lieber extended the due date for the balloon payment to May 1, 2013, but Paaso expressed uncertainty as to whether he would be able to pay it by then.

Paaso testified that he is behind on his payments in large part due to the economy, that he does not feel he has the right to avoid payments, and that he takes his obligation to pay seriously. Lieber testified that Paaso is behind on his payments in part due to increasing competitiveness in the personal injury field, but that he has never charged Paaso late fees and never would because he is "not out to gouge him," nor does he intend to foreclose on the promissory note if Paaso cannot pay the balloon payment. Although Paaso has mentioned to Lieber the possibility of Lieber eventually reacquiring an ownership interest in the firm if he is reinstated, Paaso testified that Lieber has declined to discuss that possibility with him.

In addition to the sale of the law practice, Lieber loaned $25,000 to Paaso for the operation costs of Metro Law Offices in May 2005, which Paaso repaid within approximately 1 year. Lieber also leases the building and office property—which Lieber's wife owns—to Metro Law Offices for approximately $3,700 per month. The referee found, and the record reflects, that Paaso is current on those lease payments.

### 4. *Lieber's Compliance with Rule 26, RLPR*

The Director argues that the referee clearly erred by finding that Lieber complied with Rule 26, RLPR, which requires a suspended or disbarred attorney to give notice of the suspension or disbarment to clients, opposing counsel, and any tribunal in which the attorney is involved in pending proceedings as of the date of this court's order. After we suspended and then disbarred Lieber in 2005, he submitted an affidavit claiming that he had no clients to whom he was required to give notice. The parties do not dispute that Lieber satisfied the specific provisions of Rule 26 because, in light of the sale of Lieber's law practice in May 2005, Lieber in fact had no clients at the time of either his suspension or disbarment. But the Director argues that Lieber's conduct violated the *spirit* of Rule 26 and demonstrates a lack of moral change given Lieber's continued assertion that his actions were sufficient for the purposes of complying with Rule 26.

Lieber received legal advice from Wernz, who is a former director of the Office of Lawyers Professional Responsibility (OLPR) and an ethics attorney, during the months leading up to his suspension and subsequent disbarment. Wernz testified that Lieber, when facing likely disbarment in 2005, expressed an interest in making sure he followed the rules correctly so as not to harm his later efforts at reinstatement. Wernz advised Lieber in June 2005 that, because Lieber had no clients, he had no duty to notify under Rule 26, RLPR. Wernz unequivocally testified that, in his opinion, a disbarred or

suspended attorney has no obligation to go beyond the letter of Rule 26 by notifying *former* clients, and that his view on that issue has not changed since he left his position as director of the OLPR in 1992. We express no opinion as to whether an attorney could best demonstrate moral change by providing more notice than Rule 26 requires. But those seeking guidance from our rules should be able to rely on those rules, and what Lieber did here is more than mere elevation of form over substance. He did what the rule requires. Although giving notice to his then-former clients may have provided further evidence of moral change, we cannot conclude that Lieber demonstrated a lack of moral change by seeking and following the advice of an experienced ethics attorney and former director of the OLPR. This conclusion is particularly appropriate here given that Lieber has affirmatively disclosed his disbarred status to arbitrators and his arbitration clients.

In sum, after considering the referee's findings and independently reviewing the record, we conclude that Lieber has proven "by clear and convincing evidence that he has undergone a moral change such that clients can have complete confidence in his competence and morality." *See In re Anderley*, 696 N.W.2d at 384–85. Specifically, Lieber has presented substantial evidence of an observed record of appropriate conduct, and his changed state of mind and values since his disbarment. The concerns we had about Lieber's moral change following the panel's proceeding have been addressed by the additional evidence presented before the referee and the referee's factual findings. Although the Director does not challenge the remaining five factors that we consider when evaluating a reinstatement petition, we briefly address those factors now.

### B. *Lieber's Recognition of the Wrongfulness of his Past Conduct*

Because "[t]he factors of moral change and recognition of the wrongfulness of past conduct are intertwined," we may consider those factors together. *In re Dedefo*, 781 N.W.2d 1, 8 (Minn.2010). Both the panel and the referee concluded that Lieber "recognizes the wrongfulness of his misconduct and has demonstrated remorse for his misconduct." Lieber, Paaso, and Lieber's psychologist all testified that Lieber is ashamed, remorseful, and recognizes that his conduct was wrong. In addition, Lieber testified that he has made, or attempted to make, amends with the victims of his misconduct. In light of that evidence, together with the evidence detailed above, we conclude that Lieber has recognized the wrongfulness of his past conduct.

### C. *The Length of Time Since Lieber's Misconduct and Disbarment*

The panel concluded that sufficient time has passed since Lieber's disbarment to ensure the genuineness of his rehabilitation. The referee did not specifically mention this factor. When addressing this factor, we have considered both the time since the attorney's misconduct occurred and the time since discipline was imposed. *In re Trygstad*, 472 N.W.2d 137, 139 (Minn.1991) (evaluating the time since discipline was imposed); *In re Wegner*, 417 N.W.2d 97, 99–100 (Minn.1987) (evaluating the time since petitioner's misconduct). Lieber has been disbarred for approximately 8 years, and his misconduct occurred approximately 9 years ago. Thus, we conclude that sufficient time has elapsed since Lieber's misconduct and disbarment for reinstatement to be appropriate. *See In re Ramirez*, 719 N.W.2d at 921–22 (reinstating an attorney 9 years after disbarment); *In re Reutter*, 474

N.W.2d 343, 346 (Minn.1991) (reinstating an attorney 8 years after the misconduct occurred); *In re Trygstad*, 472 N.W.2d at 139 (same).

### D. *The Seriousness of the Original Misconduct*

The panel concluded that Lieber's disciplinary offenses, while serious, are no more serious than those of other attorneys who have been reinstated after disbarment. The referee did not address this factor. Lieber does not dispute that his "scheme to defraud clients, intentional misrepresentation, lying under oath, and trust account misuse all constitute very serious misconduct." We have observed that "[t]he seriousness of the attorney's misconduct only rarely precludes further consideration of the attorney's petition for reinstatement." *In re Anderley*, 696 N.W.2d at 385 n. 6. In *In re Anderley*, we reinstated an attorney who had been disbarred for fraud, forgery, failure to maintain trust accounts, and misappropriation. *Id.* at 381. In *In re Ramirez*, we reinstated a disbarred attorney who had been convicted of felony theft-by-swindle for misappropriating $30,000 from her employer through false expense reports. 719 N.W.2d at 921–22, 925. And in *In re Trygstad*, we reinstated a disbarred attorney who had engaged in a conspiracy to distribute cocaine with a former client. 472 N.W.2d at 138. We agree with the panel's conclusion that Lieber's misconduct, while serious, is no more serious than the misconduct of reinstated attorneys Anderley, Ramirez, and Trygstad. Accordingly, the seriousness of Lieber's misconduct does not preclude his reinstatement.

### E. *Physical or Mental Illness or Pressures Susceptible to Correction*

The panel concluded that Lieber is in recovery from alcoholism, having main- tained a period of sobriety lasting more than 3 years at the time of the panel's 2011 hearing. The panel further concluded that, when that period of sobriety is considered in the context of the manner in which Lieber handled a relapse in 2008 and the 3.5 years of sobriety he maintained before that relapse, Lieber has demonstrated "that his recovery is legitimate and that his risk of reoffending is low." The referee did not reach a conclusion with respect to this factor. Lieber and his other character witnesses testified in support of Lieber by addressing his period of sobriety and his handling of a brief relapse in 2008, when he immediately admitted to the relapse. Lieber also continues to attend treatment. On the record before us, we are satisfied that this factor does not preclude Lieber's reinstatement.

### F. *Lieber's Intellectual Competency to Practice Law*

Finally, both the panel and the referee concluded that Lieber has the necessary competence to return to the practice of law. When evaluating this factor, we have considered the extent to which the petitioner has "remained acquainted with legal matters" and accumulated Continuing Legal Education (CLE) credits during the period of disbarment. *Id.* at 139. Lieber has passed the bar exam and the MPRE and has accumulated 91.5 CLE credits during his period of disbarment. In addition, Lieber has continued to work in a personal injury law office, Paaso testified in support of Lieber's intellectual competence to practice law, and the record contains affidavits from arbitrators attesting to Lieber's competence, honesty, thoroughness, and preparedness. Therefore, we agree with the conclusions of the panel and the referee that Lieber has the necessary intellectual competence to return to the practice of law.

For the foregoing reasons, we conclude that Lieber has met the heavy burden of demonstrating his rehabilitation and of proving that he is fit to practice law, subject to certain restrictions. We therefore reinstate Lieber to the practice of law and place him on probation for a period of 3 years, subject to the following conditions:

(1) Lieber shall cooperate fully with the Director and the OLPR in their efforts to monitor compliance with this probation. Lieber shall promptly respond to the Director's correspondence by the due date. He shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, Lieber shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

(2) Lieber shall not engage in the solo practice of law but shall work in a setting where he is in daily contact with, and under the direct supervision of, another Minnesota licensed attorney until further order of the Court.

(3) If, pursuant to paragraph (2), Lieber's legal work is supervised on a daily basis by an attorney with whom Lieber has an existing business relationship, then Lieber shall also be subject to supervision by an attorney with whom he does not have an existing business relationship, pursuant to a supervision plan approved by the Director. Lieber shall cooperate fully with the supervisor's efforts to monitor compliance with this probation. Lieber shall schedule a minimum of one in-person meeting with the supervisor per calendar quarter. The supervisor shall file written reports with the Director at least quarterly, or at more frequent intervals as the Director may reasonably request.

(4) Lieber shall not acquire an ownership or equity interest in a law firm during his period of probation absent approval by the Director.

(5) Lieber shall abide by the Minnesota Rules of Professional Conduct.

(6) Lieber shall continue to attend and participate in Alcoholics Anonymous or another alcohol treatment program acceptable to the Director on at least a weekly meeting basis. Lieber shall, by the tenth day of each month, without a specific reminder or request, submit to the Director attendance verification on a form provided by the Director, which provides the name, address, and telephone number of the person personally verifying the attendance.

(7) Lieber shall remain sober and refrain from the use of alcohol and other mood-altering drugs, except that he may use prescription drugs in accordance with the directions of a prescribing physician who is fully advised of Lieber's chemical dependency before issuing the prescription.

(8) Lieber shall, at his own expense, no more than twice monthly, submit to random urinalysis for drug screening at a facility approved by the Director and shall direct the drug screening facility to provide the results of all urinalysis testing to the Director's office. If, after one year, all such tests have been negative, then the frequency of the random tests may be reduced. Lieber shall cooperate with the phone-in program established by the Director for the random test. Any failure to phone-in as required by the random test program shall be considered the same as receipt of a positive test result. Any positive test result shall be grounds for probation revocation.

(9) Lieber shall ensure that he, and the law firm at which he practices, maintain

law office and trust account books and records in compliance with Minn. R. Prof. Conduct 1.15 and Appendix 1 thereto. These books and records include the following: client subsidiary ledger, checkbook register, monthly trial balances, monthly trust account reconciliation, bank statements, cancelled checks, duplicate deposit slips and bank reports of interest, service charges, and interest payments to the Minnesota Interest on Lawyer Trust Accounts Program. Such books and records shall be made available to the Director within 30 days after notification to the Director of the change in status and thereafter shall be made available to the Director at such intervals as he deems necessary to determine compliance.

Attorney conditionally reinstated.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.